| | |
|---|---|
| From: | ecipa1@aol.com |
| Subject: | RE: [EXTERNAL] RE: K165932 _ USLI in re: Chippewa Loft, LLC 032122a |
| Date: | March 22, 2022 at 7:14 AM |
| To: | Ellen Brooke  EBrooke@rssclaw.com |

What are all these attachments
I couldn't open

## Please note change in mailing address on this file, all other files and any and all other Insurer records

**Paul Abrams**
ecipa1@aol.com

**Edwin-Claude, Inc.**
**Suite 411-782**
**331 North New Ballas Rd.**
**Saint Louis,  MO 63141**

**Tel # 314-993-2266**
**Fax # 314-993-3566**

READ THIS ENTIRE EMAIL

Immediately advise ECI *in writing* if there are any post-loss obligations or conditions still required to be met pursuant to the Policy as the Insured(s) and our office are unaware of any outstanding post-loss obligations required to be met pursuant to the Policy. Therefore, please advise within *seven (7)* days from the date of this correspondence, of any *and* all such requirements or we will proceed under your agreement that there are no post-loss obligations or conditions required to be met by the Insured and that the Insured(s) has/have met any *and* all such obligations and conditions of the Insured Policy.

Thank you in advance for your anticipated cooperation in providing our office with the requested information in a timely manner. We look forward to working with you to resolve this claim.

The message included with this e-mail and any attached document(s) contains  information from the sender, which is confidential and/or privileged. This information is intended to be for the use of the addressee named. If you are not the addressee, note that any disclosure, retransmission, dissemination, photocopying, distribution or use of the contents of this e-mail information is prohibited. If you have received this e-mail in error, please delete the material from any computer and notify us by telephone at (314) 993-2266 immediately.

If this email is sent to a representative of an insurer, including, but not limited to, agents, representatives, attorneys, adjusters, consultants, investigators and/or officers of the insurer, the use of the recipient's name and/or "you" or "your", will specifically and generally refer to not only the recipient, but also the insurer. If the recipient does not have authority to act as an agent of the insurer, notify the sender immediately in writing.  No actions, presentation, submission or communications of the insured or ECI (including the contents of this email) should be construed as a submission prepared by ECI, as it may be from an independent 3rd party.  Nor should any action, presentation, submission or communications of the insured, ECI or 3rd party be interpreted as a waiver of any of the insured's rights or defenses or a demand for payment or repair. In event of partial loss by the peril of fire, the insured specifically and generally reserves the right to elect to have the insurer repair the property, returning it to a condition as good as before the loss. Neither this nor any future communication or submission, including but not limited to a demand for appraisal, is to be interpreted as a claim for payment or

including but not limited to a demand for appraisal, is to be interpreted as a claim for payment or repair. Any such claim for payment or repair will include the phrase, "The insured is hereby making a claim...". ECI has not decided as to enforce its Engagement Letter as a public adjuster agreement or appraisal agreement. Until ECI submits an estimate or scope clearly identified as prepared by ECI, ECI reserves the right to act as the insured's appraiser, as ECI will not have made any determination or opinions as to the scope of damages or amount of loss. ECI hereby certifies that is will act both impartially and in a disinterested manner, if appointed as the insured's appraiser. The insured hereby demands that the insurer notify the insured, in writing, of any obligations or duties that the insurer is waiving, now or in the future. If notice is not received, the insured will attempt to fulfill all obligations and duties. The above message is solely the personal opinion of Edwin-Claude, Inc. and/or its clients and not meant to be legal advice or a legal interpretation and should not be construed as the practice of law. Edwin-Claude, Inc. is an independent sub-contractor representing the insured(s), but not acting as an agent of the insured(s).

IF ANY INFORMATION IN THIS EMAIL IS INACCURATE, NOTIFY ECI IMMEDIATELY IN WRITING.
FAILURE TO DO SO WILL ACT AS YOUR AGREEMENT.

UNLESS PREVIOUSLY PROVIDED, THIS EMAIL SHALL SERVE AS THE INSURED'S WRITTEN NOTICE OF INTENT TO REPAIR OR REPLACE, BY REPAIR, PURCHASE OR ELECTION TO REPAIR, THE DAMAGED PROPERTY.

IF ANY INFORMATION OR STATEMENTS INCLUDED IN OR ATTACHED TO THIS EMAIL IS DISPUTED BY THE INSURER OR IF INSURER DOESN'T AGREE TO INCLUDE EDWIN-CLAUDE, INC. ON EACH AND EVERY PAYMENT AND AGREE TO EDWIN-CLAUDE,INC.'S RIGHT TO CONVERT ENGAGEMENT TO THAT OF AN APPRAISER, INSURER SHALL NOTIFY THE INSURED AND ECI WITHIN 10 DAYS OR WAIVE ITS RIGHT TO DISPUTE OR REJECT ANY STATEMENTS OR RIGHTS. NOTICE BY INSURER OF SAID DISPUTE OR REJECTION WILL NOT BIND THE INSURED TO SAME.

---

**From:** Ellen Brooke [mailto:EBrooke@rssclaw.com]
**Sent:** Monday, March 21, 2022 9:02 PM
**To:** ecipa1@aol.com
**Cc:** Monique Taylor
**Subject:** Re: [EXTERNAL] RE: K165932 _ USLI in re: Chippewa Loft, LLC 032122a

Paul,

I cannot to go back and forth with you. You have the policy, and I spelled out the provisions and duties in my letter to the insured. Once I get the full and complete documents requested under the policy, we can move things forward.

If I don't receive the full and complete documents, by the end of the 60 days, I'll set the EUO.

Take care and let me know if you need another copy of the forms, the policy, etc.

Ellen

--On the move and dictated via Siri. Please excuse typographical and grammatical errors.

Ellen Jean Brooke
Member
Rynearson, Suess, Schnurbusch
& Champion, LLC

500 N. Broadway Suite 1550
St. Louis Missouri 63102
314-333-0929 Direct


On Mar 21, 2022, at 8:28 PM, ecipa1@aol.com wrote:

> This email originated from outside the company. Be careful when replying, forwarding, or opening attachments.

Ellen

Call me
See notes below in Red


**Please note change in mailing address on this file, all other files and any and all other Insurer records**

**Paul Abrams**
ecipa1@aol.com

**Edwin-Claude, Inc.
Suite 411-782
331 North New Ballas Rd.
Saint Louis,  MO 63141**

Tel # 314-993-2266
Fax # 314-993-3566

READ THIS ENTIRE EMAIL

Immediately advise ECI *in writing* if there are any post-loss obligations or conditions still required to be met pursuant to the Policy as the Insured(s) and our office are unaware of any outstanding post-loss obligations required to be met pursuant to the Policy. Therefore, please advise within *seven (*7*)* days from the date of this correspondence, of any *and* all such requirements or we will proceed under your agreement that there are no post-loss obligations or conditions required to be met by the Insured and that the

post-loss obligations or conditions required to be met by the insured and that the Insured(s) has/have met any *and* all such obligations and conditions of the Insured Policy.

Thank you in advance for your anticipated cooperation in providing our office with the requested information in a timely manner. We look forward to working with you to resolve this claim.

The message included with this e-mail and any attached document(s) contains information from the sender, which is confidential and/or privileged. This information is intended to be for the use of the addressee named. If you are not the addressee, note that any disclosure, retransmission, dissemination, photocopying, distribution or use of the contents of this e-mail information is prohibited. If you have received this e-mail in error, please delete the material from any computer and notify us by telephone at (314) 993-2266 immediately.

If this email is sent to a representative of an insurer, including, but not limited to, agents, representatives, attorneys, adjusters, consultants, investigators and/or officers of the insurer, the use of the recipient's name and/or "you" or "your", will specifically and generally refer to not only the recipient, but also the insurer. If the recipient does not have authority to act as an agent of the insurer, notify the sender immediately in writing. No actions, presentation, submission or communications of the insured or ECI (including the contents of this email) should be construed as a submission prepared by ECI, as it may be from an independent 3rd party. Nor should any action, presentation, submission or communications of the insured, ECI or 3rd party be interpreted as a waiver of any of the insured's rights or defenses or a demand for payment or repair. In event of partial loss by the peril of fire, the insured specifically and generally reserves the right to elect to have the insurer repair the property, returning it to a condition as good as before the loss. Neither this nor any future communication or submission, including but not limited to a demand for appraisal, is to be interpreted as a claim for payment or repair. Any such claim for payment or repair will include the phrase, "The insured is hereby making a claim...". ECI has not decided as to enforce its Engagement Letter as a public adjuster agreement or appraisal agreement. Until ECI submits an estimate or scope clearly identified as prepared by ECI, ECI reserves the right to act as the insured's appraiser, as ECI will not have made any determination or opinions as to the scope of damages or amount of loss. ECI hereby certifies that is will act both impartially and in a disinterested manner, if appointed as the insured's appraiser. The insured hereby demands that the insurer notify the insured, in writing, of any obligations or duties that the insurer is waiving, now or in the future. If notice is not received, the insured will attempt to fulfill all obligations and duties. The above message is solely the personal opinion of Edwin-Claude, Inc. and/or its clients and not meant to be legal advice or a legal interpretation and should not be construed as the practice of law. Edwin-Claude, Inc. is an independent sub-contractor representing the insured(s), but not acting as an agent of the insured(s).

**IF ANY INFORMATION IN THIS EMAIL IS INACCURATE, NOTIFY ECI IMMEDIATELY IN WRITING.**
**FAILURE TO DO SO WILL ACT AS YOUR AGREEMENT.**

**UNLESS PREVIOUSLY PROVIDED, THIS EMAIL SHALL SERVE AS THE INSURED'S WRITTEN NOTICE OF INTENT TO REPAIR OR REPLACE, BY REPAIR, PURCHASE OR ELECTION TO REPAIR, THE DAMAGED PROPERTY.**

**IF ANY INFORMATION OR STATEMENTS INCLUDED IN OR ATTACHED TO THIS EMAIL IS DISPUTED BY THE INSURER OR IF INSURER DOESN'T AGREE TO INCLUDE EDWIN-CLAUDE, INC. ON EACH AND EVERY PAYMENT AND AGREE TO EDWIN-CLAUDE INC.'S RIGHT TO CONVERT**

PAYMENT AND AGREE TO EDWIN-CLAUDE,INC.'S RIGHT TO CONVERT ENGAGEMENT TO THAT OF AN APPRAISER, INSURER SHALL NOTIFY THE INSURED AND ECI WITHIN 10 DAYS OR WAIVE ITS RIGHT TO DISPUTE OR REJECT ANY STATEMENTS OR RIGHTS. NOTICE BY INSURER OF SAID DISPUTE OR REJECTION WILL NOT BIND THE INSURED TO SAME.

---

**From:** Ellen Brooke [mailto:EBrooke@rssclaw.com]
**Sent:** Monday, March 21, 2022 3:10 PM
**To:** ecipa1@aol.com
**Subject:** RE: [EXTERNAL] RE: K165932 _ USLI in re: Chippewa Loft, LLC

Paul,

Thank you for your email. I am sorry I could not get to you earlier today. I am in pre-trial hell and as such, my availability is extremely limited, but as I explained in my letter to your client, I will do everything I can to move this matter forward as expeditiously as possible. I will take you at your word on this.

I am still going through the file materials but I have spent some time with the policy and the back and forth emails. I understand your position—that this is a limits loss—and for all I know, you may be right. But the insured has not fulfilled his duties after loss and has certainly not substantiated what is required to make a formal demand, seek appraisal or file suit, in that amount etc. Please expand on specifically what duties you are referring to, since we submitted an estimate to the insurer last week, with supporting documentation and to you also. Have you reviewed your client's file, including, but not limited to, his engineer's report, its building consultants estimate, its own estimate and its real estate appraisers report? I believe that all of these (if not 3 of 4) support my client's contention that this is a total loss in regard to the policy limits.. The only one I am not sure of is what their appraiser manufactured, without properly evaluating all information, but since the property was under contract for over $2.9M, there should be no question that the FMV exceeds the policy limit  As you know well, I cannot really do anything for Mr. Padda until he complies with conditions precedent. What conditions precedent are you talking about? Please provide this information along with any policy condition that acts as a prerequisite to the insured demanding appraisal, other than a "failure to agree" on the amount of loss and damage.  Plus, that puts the ball in the insurer's court,  as a matter of law. I am not sure what you are talking about, please explain what you mean by "in the insurer's court" and how that negated my clients right to demand appraisal and your client' obligation to proceed. I know you get it—please try to help Mr. Padda understand. I would if I understood. So "learn me something Lucy".

if you can please assist him in "showing his work" and helping him complete the estimate with the requisite information, (quantity, cost, values, and amount of loss claimed) and fully executed and notarized POL and, I am hopeful I can get things moving. We have submitted our estimate in the same for Insurance Restoration Companies submit estimates to insured and insureds submit to insurer. I have attached some pages from our estimate, which prove that we submitted quantities and the estimated cost of repairs (even explaining to the

submitted quantities and the estimated cost of repairs (even explaining to the insurer how he can determine any line item price using common sense and programs readily at his disposal), not to mention the plethora of emails were we stated the insured/ opinion of the amount of loss. Unless the policy requires the submission of a proof of loss, prior to demanding appraisal, the insured wants the appraisal to proceed without delay unless and until the insurer agrees with his opinion. We notified the insurer that we felt the loss was a total loss, they notified us in writing that they thought it was a partial loss. Therefore there is a disagreement and demanding an appraisal is not premature, unless you can provide policy language requiring a proof of loss or fulfillment of any other policy condition or cooperation, before demanding an appraisal, even though they may be prerequisites of filing a law suit.

Could you also send me a recent W-9? Why do you need a w-9, I am a corporation. Do you 1099 your landlord, your company credit cards, your utility companies, … As soon as I get Mr. Padda's documentation Whatelse do you need? and I get through the rest of this file, I want to make sure you all get any undisputed/certain damages, if applicable, straight away.

If I do not hear back/receive the estimate & POL, in a week or so, I will follow up with you then. Not trying to rush you but I have three trials in a row, but I want to get you guys moving forward. Thanks

Hope you are well

Chippewa Loft, LLC
c/o Gurpreet Padda
500 N. Kingshighway
St. Louis, MO 63108
Re.: USLI in re: Chippewa Loft, LLC
Policy No.: DPS4000875B
Claim No.: K165932
Date of Loss: 10/26/2021
Dear Mr. Padda:
Please accept this correspondence in response to your Friday email. Please note, I am in pretrial on another matter, but the timely resolution of this claim remains a high priority. I am working on getting additional information to you. However, in the meantime, it is important for you to complete your duties after loss in a timely manner. These obligations are independent and not contingent on the insurer producing third-party reports or estimates. We asked for these to try to expedite the submission of our estimate and in an attempt to be submitting an estimate for an agreed scope of damage. The estimate you provided does not comply with the policy in that it does not provide a breakdown of damaged and undamaged property, including the quantity, cost, values, and amount of loss claimed. I am sorry to inform you that the estimate we provided does not only comply with the policy language, but establishes a disagreement between the insured and insurer. The requirement that you provide such documentation is a "condition precedent" under Missouri law, which means you must fulfill this obligation before payment must be made. Please provide us with the policy definition of cost, value and amount of loss. And

specifically explain why the final cost of our estimate is non-compliant with the terms of the policy, why the descriptions of items to be cleaned + items to be replaced + the omission of undamaged items is non-compliant with the terms of the policy and why identifying the estimating program (with price list) and submission of sub bids isn't sufficient for the insurer to look up/verify all the unit cost (Which are not specifically addressed in the policy, with specific policy condition references. I appreciate all that is involved in dealing with a historic building. I am not suggesting you should retain a separate party to have this done. You have retained a public adjuster with experience in creating and preparing estimates. Assisting an insured in the presentation of his claim is part of the public adjuster's service in exchange for his percentage recovery. I encourage you to get with your public adjuster and work with him in preparing and producing the documentation, along with a fully executed Sworn Statement in Proof of Loss. We will be submitting a proof of loss, as a required submission, not a claim for payment, under the reservation of all of the insured's rights, privileges, benefits and options under the policy and MO Law, including, but not limited to, our option of repair or payment and our right to demand appraisal, while reserving the abovementioned options. The sooner you complete your duties after loss, the quicker the resolution of your claim. We believe that we have fulfilled all of our obligations under the polic, except submission of the proof of loss. We have been asking for the insurer to provide us with a copy of their proof of loss for over a month. If the insurer had provided when requested, we would have completed and submitted prior to now. You didn't respond to m inquiry about the format we should use to submit, but never received a response, nor a copy of he Proof of Los in a Word Document. When will this be supplied?

Please be advised Mount Vernon Specialty Insurance Company continues to reserve any and all rights and defenses it has, or may have, under the policy of insurance and the laws of the State of Missouri and that no action taken by Mount Vernon, its affiliates, subsidiaries, employees, agents, or representatives should be considered by you to be waiver of any such rights and defenses Mount Vernon has or may have.
I look forward to working with you and your public adjuster and hope to hear from you soon. If you need another copy of the Proof of Loss or any other claim forms, please contact my assistant Monique and she will assist you. I made a request for the proof of loss in a word document, but never received. When will this be received or you are you OK with the format I submitted yesterday?

Very

**Ellen Jean Brooke**
Member
Rynearson, Suess, Schnurbusch
& Champion, LLC

500 N. Broadway Suite 1550
St. Louis Missouri 63102
314-333-0929 Direct

---

**From:** ecipa1@aol.com <ecipa1@aol.com>
**Sent:** Saturday, March 19, 2022 6:43 AM

0008

**To:** Ellen Brooke <EBrooke@rssclaw.com>
**Subject:** [EXTERNAL] RE: K165932 _ USLI in re: Chippewa Loft, LLC

> This email originated from outside the company. Be careful when replying, forwarding, or opening attachments.

Dear Ellen,

Call me

I hope that your involvement and taking over of the adjustment of this claim will be an improvement over the negotiations I have had with the insurer.

We can settle this the long way or short way.

Short way, is to talk about the real facts of this loss (and attachments) and possibly settle this claim in one or two short conversations. Or the long way, with a lot of pomp and circumstance and immediate appointment of your appraiser.

I believe that most of the information provided you by your client is either wrong or misleading.

If you agree to try the short way, you don't need to waste time reading the rest of this email, just call me.
I am pretty confident that you will agree the attached proves that the insured is owed a minimum of $2.5M.
If not, and you send me all documentation from your client supporting their position that the amount owed is not $2.5M (if that is what they believe), then I am pretty sure that after discussion with you about this additional information and the attached, you will agree that the insured is due $2.5M.

So should we try the short method? Call me.

FYI, I could also probably get my client to sign a policyholder's release for a payment of $2.51M ($2.5M Dwelling + $10K Additional Debris Removal), instead of a Proof of Loss, in exchange for payment received before the end of the month.

<span style="color:red">Is this the mechanism for calculating the amount of loss payable to the insured, is so elected?</span>
Here are the policy conditions, that according to your client's emails, since the inured did not contract for repair or replacement under option a, dictate that they pay the policy limit or repair the building to a condition as good as before the loss
<span style="color:red">Is this the mechanism for calculating the amount of loss payable to the insured, is so elected?</span>
**b.** If you do not make a claim under **a.1., a.2., a.3.,** or **a.4.**, above, we will pay the smallest
of the following, **1., 2., or 3.:**
**1.** The Limit of Insurance shown in the Declarations as applicable to the damaged
building: $2.5M

building, $2.5M

**2.** The "market value" of the damaged building, exclusive of the land value, at the time
of loss; in excess of $2.9M or
**3.** The amount it would cost to repair or replace the damaged building on the same site,
with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation. In excess of $2.5M

**B.** If partial loss ("loss") or damage to Covered Property
is caused by or results from fire, Paragraph **a.,**
of the **Loss Payment** Loss Condition is replaced
by the following:
**LOSS PAYMENT**
In the event of partial loss ("loss") or damage caused by or resulting from fire,
(we asked insurer if they agreed that this was a total loss, to which they replied negatively and classified as a partial loss)
and covered by
this Coverage Part, at your option, we will either:
**1.** Pay you an amount of money equal to the
damage done; or
**2.** Repair the damage, so that the property is in as
good a condition as before the fire. Converting the Contract of Insurance into a Construction Agreement, without limits on costs and without any obligations of the insured, financial or otherwise.

Read the rest of this email only if necessary (or required by law or the ethical rules of an attorney).

Sorry for the delay in responding to your email of yesterday. This was not a refusal to respond, as your clients would define refusal, but a delay so that I could make sure that my submission to you was as accurate as possible under the situation at hand. Even though I couldn't locate the proper terminology to clearly categorize your client's less than good faith effort to settle this claim, I am responding in an attempt to expedite the settlement of this claim.

It is the insured's opinion that the possibly unethical and potentially bad faith actions of your clients are motivated primarily due to their animosity towards public adjusters in general and the amount of this claim, as expressed by your clients to the insured's broker. Please give them the proper counsel and have them either pay the policy limit, which we have proven is the amount due and payable, or have them appoint their appraiser within 20 days of the original demand. The insured is confident, that due to the following fact: 1) The policy limit is $2.5M; The FMV of the property is over $2.525 M (as it was under contract for sale at over $2.9M); and the cost to repair is in excess of $2.535 M ($2.5M Policy Limit + $25K Deductible + $10,000 Additional Debris Removal Coverage) the insurer owes him $2.51M if he elects payment or will have to spend a lot more is the insured elects repair, (which somehow your client conveniently never mentioned this option to the insured in any of the number of threatening emails and/or letters they sent us).

**My comments to email from insured**

**From:** Gurpreet Padda [mailto:seva@padda.com]
**Sent:** Friday, March 18, 2022 5:31 PM
**To:** ecipa1@aol.com; Bill (USLI) Rohrman; douglas.maestas@sagllc.com; Monique Taylor; ebrooke@rssclaw.com; Harjot Padda
**Subject:** Re: KINGSHIGHWAY - 3/17/22a

Bill and Doug

I am somewhat confused that we received a letter indicating a failure to cooperate with the insurer at 15:33 today. We had already sent you the best information we could provide you at 10:37 am today. Which included an estimate. Why didn't your clients inform you about receipt of this estimate? Was it just like the fact that they possibly didn't inform you of my repeated attempts to obtain information from them to help me expedite the submission of our estimate, as opposed to claiming that my promise to submit an estimate when complete was somehow a refusal to submit an estimate. You should probably have them supply you with an entire copy or the claim file, including all letters and emails, for your review, before you reply. I believe, although don't know, that they have only provided you with select self-serving information. I believe this, because you have, in the past, exhibited to me that you are a knowledgeable attorney and wouldn't think that if you had all the information, that you would have drafted the attached letter as written. Possibly you would have requested additional information from your client (possibly the same information that I requested numerous times in writing). If you get their engineer's report, their appraiser's report, the Property Sale Contract, their building consultant's report and their estimate of damages, we would like a copy of them. I believe that once you review, you will see that they should pay the policy limit as soon as possible (after receipt of the Proof of Loss), as I believe the reason they refused to provide this information to us, was that it proved our loss for us and proved they owed the insured $2.5M..

Ellen

I have received your letter of representation on behalf of Mount Vernon Specialty Insurance Company
        USLI in re: Chippewa Loft, LLC
        Policy No.: DPS4000875B
        Claim No.: K165932
        Date of Loss: 10/26/2021


Attached please find a copy of the documents previously provided to the insurer. If you have additional questions, please advise. Please note the time stamp on the emails.

I have never heard of a situation in which an insurer, after a process of due diligence and analysis, refuses to provide the insured a copy of the insurer ordered engineering reports, and anticipated scope of work. I believe him. Although you and I both know that many less reputable Ins. Co.'s regularly do this. Just to make sure that we are on the same page, this is a general statement and not specifically directed at your client.

Having the insured expend time, money, and effort to obtain complex construction

designs, validate historic requirements, and then provide a scope of work which may not agree with the scope determined by the insurers engineers seems like an exercise in futility and designed to delay the process of adjudicating the claim.  It is almost as if this insurer had information proving that the amount of loss and damage exceeded the policy limit and the insurer was intentionally withholding it, in possibly efforts to delay the claim settlement and payment and in hopes that the insured made submissions that would allow the insurer to deny the claim or pay less money.  But they clearly knew that the insured felt that the property was a constructive total loss and that he expected to receive payment for the full policy limit.

Most of the messaging I have received from the insurer and the messaging they conveyed to my agent (who is a fiduciary to me and not the insurance carrier) suggests animosity to working with a Public Adjuster.  Those biases should have no role in adjudicating a claim.  He is correct.  Even though we both know that many less reputable Ins. Co.'s and their adjusters let their prejudices unreasonably affect their judgement and actions on many claims.  Again, not specifically directed at your client.  On 99+% of all the losses I handle, the insurers never demand an estimate from me or my clients.  Most of the time, if they do and I submit, they disregard my estimate an settle the claim based on their estimate.  Does your client demand estimates, under threat of non-compliance, from all their insureds on all claims or just ones with public adjuster or just ones with me?  And if so, why are they acting prejudicially against insureds with public adjusters.  To settle this claim most expeditiously, I suggest you and your client discuss the option (instead of us a proof of loss and proceeding to appraisal while they evaluate it), that in exchange for a policy holder's release, they pay my client $2.51M within 7 days  ($2.5M Building Limit + $10,000 Debris removal).  It is our opinion that the lesser of b (1), (2) and (3) is (1) the policy limit of $2.5M. And if you look as all information that we submitted and all the report and estimate obtained by the insurer, we believe that you will agree that we proved our loss to be in excess of $2.5M and proved that we are owed at least $2.5M.  To be honest with you, I do not have any knowledge of what their real estate appraisal states, but the insured believes that since he had the property under contract for over $2.9M, that no matter what other comps the insurer's appraiser used, a Court of Competent Jurisdiction would accept the value of an accepted Sale Contract as best evidence of what an educated buyer and educated seller would transact business at (definition of FMV).

Gurpreet S Padda
314 852 5500

Dear Mr. Padda:

Please be advised, I have been retained by the Mount Vernon Specialty Insurance Company ("Mount Vernon") to assist in the adjustment and resolution of your claim.  I am glad to hear that I will be adjusting the claim with you. Give me a call. We should be able to settle this claim in one conversation and without an Appraisal. But in the meantime, the insured demands that the insurer appoint it appraiser and notifies us of said appointment, in case there are any more delays in the settlement of this claim.  Please direct all future communications to my attention so that I might ensure a timely response to your relevant questions and concerns under the requirements set forth in the Missouri Code of Regulations 20 CSR 100 et. seq. and

applicable state law. We would be glad to do this. Please send us a copy of the insurer's engineer report, building consultant's estimate ins. co.'s estimate and their real estate appraiser's report for now, so we can review. Please note, I have included a carbon copy of this correspondence to your Public Adjuster at Edwin-Claude, Inc. As of today's date, despite multiple requests made upon you by Mount Vernon, via your Public Adjuster at Edwin-Claude, Inc., Mount Vernon has yet to receive an estimate of damages and amount of loss from you. This is a false statement. Your failure to submit an estimate not only delays the adjustment and resolution of your claim, but it is also a failure to meet a condition precedent to your recovery under the policy. Where in the policy does it require that the insured and/or its public adjuster submit an estimate. Please provide a copy of the policy condition that specifically requires this. And does this insurer require this of each and every insured? If not, why did they demand in this case? Does this insurer regularly provide insureds with copies of their estimate and reports? If so, why did they refuse to provide to this insured?

Under the terms of the policy, you must provide a complete estimate of damaged and undamaged property, including the quantity, cost, values, and amount of loss claimed. This is not what I find in the policy. What if found is a section that appears to be directed at personal property, because it references an "inventory" not an estimate. Personal property is inventoried, building damages are not. I searched the policy and can't find the phrase "complete estimate". If you find it, please send me a copy of said section. This requirement is considered a "condition precedent" under Missouri law, which means you must fulfill this obligation before payment must be made. Additionally, a failure to meet a condition precedent may result of the denial of your claim as a matter of law. United States Fidelity & Guaranty Company v. Hill, 261 F. Supp. 2d 1150; *see also* State Farm v. Rogers, 2020 WL 877815 (W.D. Mo. Feb. 21, 2020). You sound like the insurer on this claim, threatening to deny the insured's claim, not because we refused to submit an estimate, which may not actually be a requirement of the policy, but due to a delay in submitting an estimate (exacerbated by the insurers refusal to provide requested information in their possession which could have accelerated submission of our estimate.)

To get your claim back on track and moving forward, Mount Vernon hereby requests you complete the enclosed Sworn Statement in Proof of Loss, with all requested information, and your supporting estimate(s) providing "the quantity, cost, values and amount of loss claimed" within sixty (60) days of the date you receive this letter. This request is being made under the terms of your policy, which states in relevant part:

3. Duties in the Event of Loss or Damage
a. You must see that the following are done in
the event of loss or damage to Covered
Property:
***
(5) at our request, give us complete invent-
tories of the damaged and undamaged
the property. Include quantities, costs, val-
ues and amount of loss claimed.
(6) as often as may be reasonably required,
permit us to inspect the property proving
the loss or damage and examine your

books and records…
(7) send us a signed, sworn proof of loss containing the information we request to investigate the claim You must do this within 60 days after our request. We will supply you with the necessary forms.
(8) cooperate with us in the investigation or settlement of the claim.
b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Mount Vernon has received your demand for Appraisal. However, the demand is premature. We do not feel it is premature and feel that the insurer's refusal to either agree to pay the policy limit or proceed with appraisal is tantamount to unreasonable delay and refusal to pay. Under the terms of the policy, either party can demand an appraisal *if* you and Mount Vernon *disagree on the value of the property or the amount of loss*. This does not appear to be the MO statutorily required Policy language. According to the plain English writing of the Standard Fire Policy, it would appear that the only prerequisite for either party to demand an appraisal is "the failure to reach an agreement", not the existence of a "disagreement" and/or the existence of a written "disagreement". I personally believe that the MO Standard Fire Policy was written to protect both the insured and insurer from one party stating its opinion on the amount of loss and damage and the other party failing to either agree or disagree, unreasonably and intentionally withholding agreement or disagreement, to place the claim in abeyance , so that the other party's right to demand appraisal would be unreasonable disregarded. First of all, we notified your client numerous times that it was our opinion that the amount of the loss, under all calculation scenarios outlined in the policy, exceeded the policy limit of $2.5M, to which the insurer refused to respond. You may question how I know this. It is a simple answer. I was intimately involved in the writing of the below language with the MO Dept of Ins. in regard to amending the MO Fire Policy in 1999. However, there is currently no disagreement on the value of the property or amount of the loss as Mount Vernon is still waiting for your full and complete estimate. But there is a "failure to agree", as delineated in the MO Standard Fire Policy (the only prerequisite to demanding an appraisal, not complying with other policy conditions, not submitting to an EUO, not submitting a proof of loss, nothing but the failure of the two parties to agree) apparently requiring your client to either agree with our opinion that the amount of money owed, under option b(1), (2) and (3) is $2.5M Policy Limit ($2.51M including the additional Debris Removal Coverage), because the amount of loss and damage exceeds this amount or proceed with appraisal. If you find any policy condition, adding additional prerequisites on either parties demand for appraisal, please provide us with a copy of said specific policy language. Additionally, since we notified the insurer that we felt that this was a total loss and they notified us that it was not a total loss, but a partial loss, there actually is a disagreement in existence, supported in writing my your clients, thereby allowing the

<span style="color:red">disagreement in existence, supported in writing my your clients, thereby allowing the insured to demand appraisal, even by the inaccurate and potentially unenforceable language contained in their policy.</span>  Upon receipt of your full and complete estimate, the company will work timely and effectively to review the same, contact you with questions or concerns and make an expedient claim decision. <span style="color:red">Why do you refer to this action as in the future tense?  We are confused.  We have already, not only multiple times given the insurer our opinion of the amount of loss and damage, and the amount owed but previously submitted an estimate supporting this position.  We even asked for a Proof of Loss previously, plus numerous other documents in your client's possession, so that we could more accurately submit our estimate and proof of loss simultaneous. It is interesting that only now that they have retained your services, have you on their behalf, supplied us with a Proof of Loss.  Was this based on our request or is this a precursor to you and your client demanding an EUO, to further delay the settlement and payment of this claim?</span>

Section 20 CSR 500-1.100 - Standard Fire Policies  **4.** The language in lines 123-140 of the 1943 Standard Fire Insurance Policy of New York relating to "appraisal" shall be superseded by the following or equivalent language: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state and county (or city if the city is not within a county) in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. The umpire shall make the award within thirty (30) days after the umpire receives the appraisers' submissions of their differences. An award in writing, so itemized, of any two (2) when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting such appraiser and the expenses of appraisal and umpire shall be paid by the parties equally."**(B)** The language required in section (2) must be printed upon any insurance policies filed for use in Missouri after July 1, 1999. All policy forms filed prior to July 1, 1999, may be amended by endorsement not later than January 1, 2000, to comply with this regulation.

Please be advised Mount Vernon Specialty Insurance Company continues to reserve any and all rights and defenses it has, or may have, under the policy of insurance and the laws of the State of Missouri and that no action taken by Mount Vernon, its

affiliates, subsidiaries, employees, agents, or representatives should be considered by you to be waiver of any such rights and defenses Mount Vernon has or may have.

<span style="color:red">Please help your clients return to a good faith manner of handling this claim, free of their personal feelings about public adjusters and their apparent intent to hold onto the insured's $2.5M for as long as they can, and overnight payment to the insured upon receipt of the completed and executed proof of loss, which we will try to have completed, notarized and submitted this weekend.</span>

Very truly yours,
Ellen Jean Brooke
**ebrooke@rssclaw.com**

**Please note change in mailing address on this file, all other files and any and all other Insurer records**

**Paul Abrams**
**ecipa1@aol.com**

**Edwin-Claude, Inc.**
**Suite 411-782**
**331 North New Ballas Rd.**
**Saint Louis,  MO 63141**

**Tel # 314-993-2266**
**Fax # 314-993-3566**

READ THIS ENTIRE EMAIL

Immediately advise ECI *in writing* if there are any post-loss obligations or conditions still required to be met pursuant to the Policy as the Insured(s) and our office are unaware of any outstanding post-loss obligations required to be met pursuant to the Policy. Therefore, please advise within *seven (7)* days from the date of this correspondence, of any *and* all such requirements or we will proceed under your agreement that there are no post-loss obligations or conditions required to be met by the Insured and that the Insured(s) has/have met any *and* all such obligations and conditions of the Insured Policy.

Thank you in advance for your anticipated cooperation in providing our office with the requested information in a timely manner. We look forward to working with you to resolve this claim.

The message included with this e-mail and any attached document(s) contains  information from the sender, which is confidential and/or privileged. This information is intended to be for the use of the addressee named. If you are not the addressee, note that any disclosure, retransmission, dissemination, photocopying, distribution or use of the contents of this e-mail information is prohibited. If you have received this e-mail in error, please delete the material from any computer and notify us by telephone at (314) 993-2266 immediately.

If this email is sent to a representative of an insurer, including, but not limited to, agents, representatives, attorneys, adjusters, consultants, investigators and/or officers of the insurer, the use of the recipient's name and/or "you" or "your", will specifically and generally refer to not only the recipient, but also the insurer. If the recipient does not have

authority to act as an agent of the insurer, notify the sender immediately in writing. No actions, presentation, submission or communications of the insured or ECI (including the contents of this email) should be construed as a submission prepared by ECI, as it may be from an independent 3rd party. Nor should any action, presentation, submission or communications of the insured, ECI or 3rd party be interpreted as a waiver of any of the insured's rights or defenses or a demand for payment or repair. In event of partial loss by the peril of fire, the insured specifically and generally reserves the right to elect to have the insurer repair the property, returning it to a condition as good as before the loss. Neither this nor any future communication or submission, including but not limited to a demand for appraisal, is to be interpreted as a claim for payment or repair. Any such claim for payment or repair will include the phrase, "The insured is hereby making a claim...". ECI has not decided as to enforce its Engagement Letter as a public adjuster agreement or appraisal agreement. Until ECI submits an estimate or scope clearly identified as prepared by ECI, ECI reserves the right to act as the insured's appraiser, as ECI will not have made any determination or opinions as to the scope of damages or amount of loss. ECI hereby certifies that is will act both impartially and in a disinterested manner, if appointed as the insured's appraiser. The insured hereby demands that the insurer notify the insured, in writing, of any obligations or duties that the insurer is waiving, now or in the future. If notice is not received, the insured will attempt to fulfill all obligations and duties. The above message is solely the personal opinion of Edwin-Claude, Inc. and/or its clients and not meant to be legal advice or a legal interpretation and should not be construed as the practice of law. Edwin-Claude, Inc. is an independent sub-contractor representing the insured(s), but not acting as an agent of the insured(s).

**IF ANY INFORMATION IN THIS EMAIL IS INACCURATE, NOTIFY ECI IMMEDIATELY IN WRITING.**
**FAILURE TO DO SO WILL ACT AS YOUR AGREEMENT.**

**UNLESS PREVIOUSLY PROVIDED, THIS EMAIL SHALL SERVE AS THE INSURED'S WRITTEN NOTICE OF INTENT TO REPAIR OR REPLACE, BY REPAIR, PURCHASE OR ELECTION TO REPAIR, THE DAMAGED PROPERTY.**

**IF ANY INFORMATION OR STATEMENTS INCLUDED IN OR ATTACHED TO THIS EMAIL IS DISPUTED BY THE INSURER OR IF INSURER DOESN'T AGREE TO INCLUDE EDWIN-CLAUDE, INC. ON EACH AND EVERY PAYMENT AND AGREE TO EDWIN-CLAUDE,INC.'S RIGHT TO CONVERT ENGAGEMENT TO THAT OF AN APPRAISER, INSURER SHALL NOTIFY THE INSURED AND ECI WITHIN 10 DAYS OR WAIVE ITS RIGHT TO DISPUTE OR REJECT ANY STATEMENTS OR RIGHTS. NOTICE BY INSURER OF SAID DISPUTE OR REJECTION WILL NOT BIND THE INSURED TO SAME.**

---

**From:** Monique Taylor [mailto:motaylor@rssclaw.com]
**Sent:** Friday, March 18, 2022 3:33 PM
**To:** seva@padda.com
**Cc:** paulabrams@edwin-claudeinc.com
**Subject:** K165932 _ USLI in re: Chippewa Loft, LLC

Good afternoon Mr. Padda,

Please see attached correspondence from attorney, Ellen J. Brooke, with regard to the

above-referenced matter.

**Thank you,**

**Monique Taylor**
**Legal Assistant to**
**Ellen Jean Brooke**
**Katherine M. Smith**
**Olivia G. Findley**
**500 N. Broadway Suite 1550**
**Saint Louis Missouri 63102**
**314.333.0943  Direct**
[www.rssclaw.com](www.rssclaw.com)



