ecipa1@aol.com

**To:** ecipa1@aol.com
**Subject:** RE: Just to make sure you have all submissions you need for Chippewa Lofts   Part 1a

---

**From:** ecipa1@aol.com [mailto:ecipa1@aol.com]
**Sent:** Sunday, June 5, 2022 10:30 AM
**To:** 'Ellen Brooke' (EBrooke@rssclaw.com)
**Subject:** Just to make sure you have all submissions you need for Chippewa Lofts Part 1a

There may be more to follow, if needed.

Please let me know if you still don't have all the documentation necessary to support our building scope and estimate (prepared in compliance with the policy conditions), a real estate appraisal in contradiction to your appraisal, the existence of a disagreement on the amount of loss and damage, via both the real estate appraisers evaluation and your representatives opinion of the repair cost and our estimate, the insured's right to demand appraisal and your obligation to appoint an appraiser.

Why have you still refused to provide us with a copy of the estimate you had prepared for the insurer?


**Please note change in mailing address on this file, all other files and any and all other Insurer records**

**Paul Abrams**
ecipa1@aol.com

**Edwin-Claude, Inc.**

1



**Rynearson, Suess, Schnurbusch & Champion**
www.rssclaw.com

*St. Louis, MO Office:*
*500 N. Broadway, Suite 1550*
*St. Louis, MO 63102*
*Phone: (314) 421-4430*
*Fax: (314) 421-4431*

*Edwardsville, IL Office:*
*107 Southpointe Drive*
*Edwardsville, IL 62025*
*Phone: (618) 659-0588*
*Fax: (618) 465-3744*

*Fairview Heights, IL Office:*
*141 Market Place, Suite 104*
*Fairview Heights, IL 62208*
*Phone: (618) 628-2000*
*Fax: (618) 628-2007*

PLEASE RESPOND TO THE ST. LOUIS OFFICE

ST. LOUIS OFFICE:
Sam P. Rynearson
Jeffrey K. Suess*
Debbie S. Champion*
John P. Kemppainen, Jr.*
Ellen J. Brooke
Michael C. Margherio
Heather J. Hays*
Patricia B. Frank
Victor H. Essen*
Katherine M. Smith*
J. Michael Waller*
Jennifer L. Woulfe*

Also Licensed in:
* Illinois      ↓ California
⁙ New Jersey   + Ohio

Andrew J. Andereck
Stephen J. Barber*
Olivia G. Findley
Mitchel T. Maglione
Sarah P. McConnell⁺
Alexander S. K. Parker
Matthew K. Suess*↓
Ellen A. Thomas
Matthew S. Wideman

Of Counsel:
Susan M. Herold*
Dean A. Stark⁺
R.B. Regan
Darold E. Crotzer

EDWARDSVILLE OFFICE:
Scott D. Bjorseth•
Michael C. Hobin
David A. Schott•
Tori L. Walls•

Of Counsel:
William H. Hoagland
Stephen C. Mudge

FAIRVIEW HEIGHTS OFFICE:
James E. DeFranco•
Daniel L. Bradley•
Nicholas C. Martin•

•Also Licensed in Missouri

Kevin P. Schnurbusch (1959-2018)

June 3, 2022

<u>Sent via email: jpadda@pbblawfirm.com</u>
Padda, Benner & Benner, LLC
Harjot S. Padda, Esq.
3915 Brannon Avenue
St. Louis, Missouri 63109

      **RE**:    USLI in re: Chippewa Loft, LLC
             Policy No.:    DPS4000875B
             Claim No.:    K165932
             Date of Loss:  10/26/2021

Dear Mr. Padda,

      Please accept this correspondence in response to your demand letter of May 25, 2022. I am hopeful that, with a direct and open dialogue, you and I can work together to resolve this matter for our clients.

      Respectfully, we disagree with the assertion that Mount Vernon has acted vexatiously during this claim. To the contrary, Mount Vernon has done everything possible to resolve the claim, including hiring my firm, to get the insured's public adjuster to fulfill his obligations to the insured. Specifically, to produce a full and formal presentation of Chippewa's claim, including, but not limited to, a repair scope including the cost, value, quantities, and amount of loss claimed using the proper valuation provided by the policy.

      Under the public adjuster statute, assisting the insured with the formal presentation of his claim is the primary function of a public adjuster. Preparing and submitting a full and complete repair scope of the covered damages as the valuation stated in the policy is not only the primary role of the public adjuster, but it is also the measure by which a public adjuster is paid. However, to this date, we have yet to receive a full and complete repair scope from Edwin-Claude.

For example, the scope presented by Mr. Abrams was incomplete in that it did not inventory the individual damages, costs, values, or quantities and did not include a breakdown of pricing and labor. It utilized the improper value of materials, employing "like kind and quality" versus "less costly materials with allowance for physical deterioration and deprecation" and included damages unrelated to the loss and not covered by the policy. These errors and deficiencies have been pointed out to Mr. Abrams, multiple times, with no meaningful response.

To be clear, Mount Vernon has never demanded an appraisal based on the scope of repair because we never received a full and complete scope of repair on behalf of the insured. We have, however, received many emails from the public adjuster, wherein he makes conflicting demands for payment, while he simultaneously "reserving the right of election to repair," and at the same time demanding appraisal and "appointing" himself to serve as the insured's appraiser. Mr. Abrams knows the election to repair or receive payment is to be clear and unequivocal and that he is prohibited by long-standing Missouri law from acting as an appraiser in an appraisal which he has a pecuniary interest. He is also well aware that a condition precedent to an appraisal is a full and complete repair scope with the requisite information and breakdown. If time spent on these emails had been spent on the proper presentation of the insured's claim, this matter would long since be resolved.

While Mount Vernon is under no requirement to secure or produce a scope of repair of its own, either under the policy or the laws of the state of Missouri, Mount Vernon's purpose in securing its own repair scope is to fully and fairly evaluate the repair scope submitted by the insured. As Mount Vernon has not received a full and complete repair scope, Mount Vernon does not rely on its repair scope for the amount of loss. Further, the market value report procured by Mount Vernon is the lower of the two values, and as such, Mount Vernon made payment on that amount as reflected in the market value report by Lauer, Jersa & Associates. Nevertheless, enclosed please find a copy of the cost of repair scope prepared by SAG for purposes of transparency and as a showing of good faith.

To do date, Mount Vernon has not received a full and complete repair scope on behalf of Chippewa LLC—the scope of repair (using less costly materials less deterioration and depreciation) being one (1) of the three (3) measures of damages under the Functional Building Valuation Endorsement. It was not until May 25, 2022 (the same day of your letter) when Dr. Padda, himself, produced a complete copy of a market value report by Greater St. Louis Appraisals, that Mount Vernon received substantive documentation showing there may be a genuine dispute of the amount of loss. As a result, Mount Vernon is investigating the difference between the two reports to identify the basis for the stark difference in value.

Lastly, as I told Mr. Abrams of Edwin-Claude in my April 19, 2022 email, the market value payment made by Mount Vernon represents the undisputed value of loss and the check can be cashed without condition. It was meant as a good faith payment of the undisputed amount. Mount Vernon categorically denies any trick to induce the insured to waive its rights.

Please find a copy of a Complaint for Declaratory Judgment filed with the United States District Court of Missouri this week. Due to the issues raised in this letter, we are seeking the

guidance of the Court with respect to adjudication of this claim and/or handling or enforcing a fair and impartial appraisal   Please advise if you agree to accept service of the Complaint.

    Mount Vernon Specialty Insurance Company continues to reserve any and all rights and defenses it has, or may have, under the policy of insurance and the laws of the State of Missouri and that no action taken by Mount Vernon, its affiliates, subsidiaries, employees, agents, or representatives should be considered by you to be waiver of any such rights and defenses Mount Vernon has or may have.

    Very truly yours,

    Ellen Jean Brooke
    ebrooke@rssclaw.com

Enclosure(s)



**Rynearson, Suess, Schnurbusch & Champion**
www.rssclaw.com

*St. Louis, MO Office:*
*500 N. Broadway, Suite 1550*
*St. Louis, MO 63102*
*Phone: (314) 421-4430*
*Fax: (314) 421-4431*

*Edwardsville, IL Office:*          *Fairview Heights, IL Office:*
*107 Southpointe Drive*              *141 Market Place, Suite 104*
*Edwardsville, IL 62025*             *Fairview Heights, IL 62208*
*Phone: (618) 659-0588*              *Phone: (618) 628-2000*
*Fax: (618) 465-3744*                *Fax: (618) 628-2007*

**PLEASE RESPOND TO THE ST. LOUIS OFFICE**

*ST. LOUIS OFFICE:*
Sam P. Rynearson
Jeffrey K. Suess*
Debbie S. Champion*
John P. Kemppainen, Jr.*
Ellen J. Brooke
Michael C. Margherio
Heather J. Hays*
Patricia B. Frank
Victor H. Essen*
Katherine M. Smith*
J. Michael Waller*
Jennifer L. Woulfe*

Andrew J. Andereck
Stephen J. Barber*
Olivia G. Findley
Mitchel T. Maglione
Sarah P. McConnell⁺
Matthew K. Suess*↓
Ellen A. Thomas
Matthew S. Wideman

*Of Counsel:*
Susan M. Herold*
Dean A. Stark⁺
R.B. Regan
Darold E. Crotzer

*Also Licensed in:*
* *Illinois*      ↓ *California*
⁘ *New Jersey* + *Ohio*

*EDWARDSVILLE OFFICE:*
Scott D. Bjorseth•
Michael C. Hobin
David A. Schott•
Tori L. Walls•

*Of Counsel:*
William H. Hoagland
Stephen C. Mudge

*FAIRVIEW HEIGHTS OFFICE:*
James E. DeFranco•
Daniel L. Bradley•
Nicholas C. Martin•

•*Also Licensed in Missouri*

April 1, 2022

<u>Sent via email: seva@padda.com</u>
Chippewa Loft, LLC
c/o Gurpreet Padda
500 N. Kingshighway
St. Louis, MO 63108

        **RE:**    USLI in re: Chippewa Loft, LLC
                  Policy No.:   DPS4000875B
                  Claim No.:    K165932
                  Date of Loss: 10/26/2021

Dear Mr. Padda,

      Please accept this correspondence as confirmation of receipt of a Sworn Statement in Proof of Loss along with an incomplete repair estimate and masonry bid received on March 31, 2022.

      Mount Vernon Specialty Insurance Company ("Mount Vernon") hereby rejects the Sworn Statement in Proof of Loss as submitted because it remains incomplete and is not accompanied by a complete inventory or complete estimate as directed by the express terms of the Duties After Loss provision of your policy with Mount Vernon.

> 3. **Duties in the Event of Loss or Damage**
> a.     You must see that the following are done in the event of loss or damage to Covered Property:
> \*\*\*
>
> (5) at our request, give us complete inventtories of the damaged and undamaged the property. **Include quantities, costs, values and amount of loss claimed**.
>
> (6) as often as may be reasonably required, permit us to inspect the property proving

> the loss or damage and examine your books and records...
>
> (7) send us a signed, sworn proof of loss ==containing the information we request to investigate the claim==. You must do this within 60 days after our request. We will supply you with the necessary forms.
>
> (8) cooperate with us in the investigation or settlement of the claim.

In addition to the requirement that Chippewa Lofts LLC. ("Chippewa") provide Mount Vernon an inventory/estimate of the damaged property, including quantities, costs, values, and amount of loss claimed, please note Chippewa's policy contains a **Function Building Valuation endorsement** which states, in relevant part, as follows:

> **FUNCTIONAL BUILDING VALUATION**
>
> a. ==*If you contract for repair or replacement of the loss or damage to restore the building* shown in the Declarations for the same occupancy and use, *within one hundred eighty (180) days of the damage*==, unless we and you otherwise agree we will pay the smallest of the following:
>
> 1. The Limit of Insurance shown in the Declarations as applicable to the damaged building.
> 2. In the event of a total loss, the cost to replace the damaged building on the same site with a less costly building that is functionally equivalent to the damaged building.
> 3. In the event of a partial loss, the cost to repair or replace the damaged portion of the building with less costly material, if available, in the architectural style that existed before the loss or damage occurred.
> 4. The amount you actually spend that is necessary to repair or replace the lost or damaged building with less costly material if available.
>
> b. ==If you do not make a claim under a.1., a.2., a.3., or a.4., above, we will pay the smallest of the following==, 1., 2., or 3.:
>
> 1. The Limit of Insurance shown in the Declarations as applicable to the damaged building;
> 2. The "market value" of the damaged building, **exclusive of the land value**, at the time of loss; or
> 3. The amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation.
>
> \*\*\*

Again, a demand for Appraisal is premature as there is no genuine dispute as to the amount of loss, and Mount Vernon has paid the smallest of the amounts in subsection b(1-3)—"2. **The "market value" of the damaged building, exclusive of the land value, at the time of loss..."**

Please be advised Mount Vernon Specialty Insurance Company continues to reserve any and all rights and defenses it has, or may have, under the policy of insurance and the laws of the State of Missouri and that no action taken by Mount Vernon, its affiliates, subsidiaries, employees,

*[Handwritten annotation: Insurer's Atty conveniently did not include in this letter the policy definition of "market value".]*

agents, or representatives should be considered by you to be waiver of any such rights and defenses Mount Vernon has or may have.

Very truly yours,

Ellen Jean Brooke
ebrooke@rssclaw.com

cc: Paul Abrams, Public Adjuster
paulabrams@edwin-claudeinc.com

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**

# FUNCTIONAL BUILDING VALUATION

The information for this endorsement will be shown in the Declarations.

The Limit of Insurance shown in the Declarations is the only limit of insurance applicable to the building described in the Declarations.

With respect to the building described in the Declarations, Section **E. Loss Conditions, 7. Valuation**, items **a.** and **b.**, are deleted in their entirety and replaced with the following:

*[handwritten annotation: Insurer failed to identify this replacement in their letter. See attached]*

   a. If you contract for repair or replacement of the loss or damage to restore the building shown in the Declarations for the same occupancy and use, within one hundred eighty (180) days of the damage, unless we and you otherwise agree we will pay the smallest of the following:
      1. The Limit of Insurance shown in the Declarations as applicable to the damaged building.
      2. In the event of a total loss, the cost to replace the damaged building on the same site with a less costly building that is functionally equivalent to the damaged building.
      3. In the event of a partial loss, the cost to repair or replace the damaged portion of the building with less costly material, if available, in the architectural style that existed before the loss or damage occurred.
      4. The amount you actually spend that is necessary to repair or replace the lost or damaged building with less costly material if available.
   b. If you do not make a claim under **a.1.**, **a.2.**, **a.3.**, or **a.4.**, above, we will pay the smallest of the following, **1.**, **2.**, or **3.**:
      1. The Limit of Insurance shown in the Declarations as applicable to the damaged building;
      2. The "market value" of the damaged building, exclusive of the land value, at the time of loss; or
      3. The amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation.

The following is added to Section **E. Loss Conditions, 7. Valuation**:

   If there is other insurance covering the same loss or damage our insurance is excess. But we will not pay more than the applicable Limit of Insurance.

The following Definition is added:

CP 109 (04-15)

Page 1 of 2

**"Market Value"**, as used in this endorsement, means the price that the property might be expected to realize if offered for sale in a fair market.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

5. **Recovered Property**

   If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. **Vacancy**

   a. **Description Of Terms**

      (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

         (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

         (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

            (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

            (ii) Used by the building owner to conduct customary operations.

      (2) Buildings under construction or renovation are not considered vacant.

   b. **Vacancy Provisions**

      If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

      (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

         (a) Vandalism;

         (b) Sprinkler leakage, unless you have protected the system against freezing;

         (c) Building glass breakage;

         (d) Water damage;

         (e) Theft; or

         (f) Attempted theft.

      (2) With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

7. **Valuation**

   We will determine the value of Covered Property in the event of loss or damage as follows:

   a. At actual cash value as of the time of loss or damage, except as provided in b., c., d. and e. below.

   b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

==The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.==

==However, the following property will be valued at the actual cash value even when attached to the building:==

   (1) Awnings or floor coverings;

   (2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

   (3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

   (1) Actual cash value of the lost or damaged property if you make repairs promptly.

   (2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

   (a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

   (b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

   If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

   (3) Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Coinsurance**

   If a Coinsurance percentage is shown in the Declarations, the following condition applies.

   a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

   Instead, we will determine the most we will pay using the following steps:

   (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

   (2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

   (3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

   (4) Subtract the deductible from the figure determined in Step (3).

   We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE #1 (UNDERINSURANCE)**

| When: | | |
|---|---|---|
| The value of the property is: | | $ 250,000 |
| The Coinsurance percentage for it is: | | 80% |
| The Limit of Insurance for it is: | | $ 100,000 |
| The Deductible is: | | $ 250 |
| The amount of loss is: | | $ 40,000 |

Step (1): $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

© ISO Properties, Inc., 2007