IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MOUNT VERNON SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:22-cv-00583-SEP |
| v. | ) | |
| | ) | |
| CHIPPEWA LOFTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Mount Vernon Specialty Insurance Company pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 4.01(E) moves this Honorable Court to grant the Plaintiff Summary Judgment because as there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. In support thereof, Plaintiff states:

**INTRODUCTION**

*Policy*

On November 27, 2020, Mount Vernon Specialty Insurance Company issued Chippewa Lofts LLC, a Surplus Lines Policy insuring the vacant church building owned by Defendant Chippewa Lofts, LLC. (SUMF ⁋ 14) and located at 500 N. Kingshighway Boulevard, St. Louis, Missouri, 63108. (SUMF ⁋ 14). The whole of the vacant church was insured for  $2,500,000 under policy no. #DPS400875 ("the Policy") utilizing "functional replacement" formula for loss valuation.  This formula replaces the typical methods such as "like kind or quality," "replacement cost," or "actual cash value" to make coverage affordable and keep premiums reasonable on properties otherwise prohibitively expensive to insure. (SUMF ⁋ 1; 3; 5; 7-9; 11; 15).

1

Under the FBVE, if an insured chooses not to contract for repairs and instead opts for a cash settlement, Mount Vernon is obligated to pay the lowest of three options under FBVE Section B: (1) the Limit of Insurance; (2) the "market value" of the damaged building (excluding land value) at the time of the loss; or (3) the cost to repair or replace the damaged building on the same site with less expensive materials, maintaining the architectural style that existed before the damage, while accounting for physical deterioration and depreciation. (SUMF ℙ 9).

In addition to the timely payment of premiums, the Policy requires the insured perform certain duties after loss, known as conditions precedent, including but not limited to mitigate and protect the property from further damage, and cooperate with the insurer in the claim by, amount other things, submitting a scope/estimates/inventory of damages claimed.  (SUMF ℙ 4)

*Partial Loss by Fire*

On October 26, 2021, the vacant building sustained a partial loss by fire.  Following notice of the loss, Mount Vernon engaged a third-party adjuster to assess the cost of repair under the FBVE and  as well as a real estate firm to determine the market value at the time of loss. (SUMF ℙ 16; 17).

 Defendant hired public adjuster Paul Abrams and vested in Abrams sole authority to speak and act on behalf of Defendant on all matters related to the loss and claim. (SUMF ℙ 18).  Despite repeated requests, Abrams refused to provide his estimate of the loss in accordance with the FBVE building's market value using the "functional replacement" standard required by the Policy and instead submitted repair cost estimates using "like, kind and quality." (SUMF ℙ 26-29; 35).

While refusing to cooperate by providing an estimate of damages using the FBVE, Abrams made repeated demands on Mount Vernin for immediate payment of $2.5 million dollars.  (SUMF ℙ 20-26;30-34).  In May 2022, having exhausted its efforts to secure Defendant's via its

representative, Mount Vernon issued a good-faith payment of $875,000, the minimum amount Mount Vernon believed it might owe under the endorsement. (SUMF ⁋ 36).

Ultimately, Abrams acknowledge receipt of the $875,000 payment but denied the sufficiency thereof, claiming the actual cash value of the building exceeds the policy limits of $2.5 million and arguing Mount Vernon had breached its contract of insurance with Defendant Chippewa lofts LLC.  (SUMF ⁋ 36).

Defendant has not contracted for repair, and FBVE Section B governs valuation and payment on this claim. (SUMF ⁋ 37).  However, Defendant has repeatedly failed and/or refused to submit its own estimates under the Policy's functional valuation method—even after 2 years of litigation, in breach of its duties after loss.  As a result of this failure, in tandem with Abrams repeated demands for the actual cash value of the cost of repair, Mount Vernon has been prejudiced in having to bring this lawsuit and seek this Honorable Court's intervention.

Mount Vernon seeks a judicial declaration upholding the validity and enforceability of the FBVE endorsement according to its plain and unambiguous terms; that in light of the Defendant's ongoing refusal to submit its estimates using the FBVE, Mount Vernon has fulfilled its obligations under the Policy and owes no further duty to Defendant.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the facts, viewed in the light most favorable to the nonmoving party, establish there is no genuine issue of material fact and that the moving party has the right to a judgment as a matter of law. *Olga Despotis Trust v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1059 (8th Cir. 2018). When federal jurisdiction is based on diversity of citizenship, state law governs the interpretation of insurance policies. *Id*. (citing *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 447 (8th Cir. 2016)).

3

Under Missouri law, summary judgment is particularly appropriate when the construction of an unambiguous contract is at issue. *Pakmark Corporation v. Liberty Mutual Insurance Company,* 943 S.W.2d 256 (Mo.App. E.D. 1997). When a policy's terms are unambiguous, courts must construe the policy exactly as written. *Id.* (citing *Madison Block Pharmacy, Inc. v. U.S. Fidelity & Guaranty Co.*, 620 S.W.2d 343, 346 (Mo. banc. 1981)).

<u>**ARGUMENT**</u>

I.   **Summary Judgment in Favor of Mount Vernon is Proper Because as a Matter of Law the Policy Clearly and Unambiguously Replaces its "Valuation" Conditions with the Valuation Methods Described in the FBVE, and there is no Genuine Dispute of Material Fact Defendant's Claim Falls Under the FBVE's Section B Valuation Conditions.**

There is no genuine dispute of material fact that the Policy's exclusive method for valuing Defendant's claim is Section B of the FBVE. As a matter of law, the three available valuation options for Defendant's claim under Section B - "the Limit of Insurance," "market value," and "cost to repair with less costly material in the architectural style that existed before the damage occurred" - are all plain and unambiguous. Since the FBVE is integrated into the Policy as a matter of law, and its language is unambiguous as a matter of law, the FBVE is, therefore, valid, applicable, and enforceable.

Interpretation of an insurance policy is an issue of law. *Progressive Preferred Ins. Co. v. Reece*, 498 S.W.3d 498, 502 (Mo. App. W.D. 2016). When construing terms in an insurance policy, courts should apply the plain meaning of the term which an ordinary person of average understanding would attach to the term if purchasing insurance. *Id.* Language is ambiguous only if it is reasonably open to different constructions. *Id.* Ambiguities are resolved in favor of the insured, but courts must be careful not to "unreasonably distort the language of a policy or exercise

inventive powers for the purpose of creating an ambiguity where none exists." *Id.* (quoting *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 554 (Mo. banc 2014)).

A.   **As a matter of law, Defendant's Policy clearly and unambiguously incorporates the FBVE as its valuation method following a loss.**

As an initial matter, in Missouri, functional replacement cost provisions are valid and enforceable when unambiguous. *Bond v. Liberty Ins. Corp.*, 272 F.Supp.3d, 1112, 1129 (W.D. Mo. 2017); see also *Lafollette v. Liberty Mut. Fire Ins. Co.*, 2017 WL 1026424 at *20 (holding that functional replacement cost endorsement was unambiguous and applied to claims brought under that portion of insurance coverage). Functional building valuation is a common alternative to "actual cost value" and "replacement cost value" methods in valuing a loss, and especially common in situations where replacement cost far surpasses the market value of a building. Darren A. Prum, *The Next Green Issue: Considering Property Insurance for the Green Building*, 7 Va. L. & Bus. Rev. 421, 426-427 (2013). Instead, in partial loss situations "functional replacement" allows for repairs or replacements using less expensive materials in the same style. *Id.* at 427.

This valuation method aligns precisely with the terms outlined in Defendant's Policy. (SUMF ⸿ 8-9). Defendant's Policy contains two pages of declarations. (SUMF ⸿ 5). The second page states: "The following forms apply to the Commercial Property Coverage part". (SUMF ⸿ 5). Form CP 109 – the FBVE – is included in this list. (SUMF ⸿ 5). This language is plain, clear and unambiguous: the FBVE unambiguously applies to the Policy's Commercial Property coverage.

The Policy's Commercial Property coverage declarations indicate the Policy includes "Building" coverage. (SUMF ⸿ 3). The FBVE, as an amendatory endorsement, precedes the Commercial Property coverage form. (SUMF ⸿ 6). Atop the FBVE is bold, conspicuous text stating "This endorsement modifies insurance provided under the following: **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**". (SUMF ⸿ 7). (emphasis in original). This

5

language is also plain, clear and unambiguous and requires no judicial interpretation: the FBVE changes the terms in the general coverage form.

Immediately before it delineates the modified language applicable to the Policy's general coverage form, the FBVE states "With respect to the building described in the Declarations, Section **E. Loss Conditions, 7. Valuation**, items **a.** and **b.**, are deleted in their entirety and replaced with the following:". (SUMF ⁋ 8-9). This language contains three equally unambiguous phrases. The first phrase, "With respect to the building described in the Declarations… " is plain, clear and unambiguous: the FBVE modifies coverage for the building covered by the Policy, specifically 500 N. Kingshighway Boulevard, Saint Louis, Missouri, 63108. (SUMF ⁋ 1; 3).

The second phrase, "… Section **E. Loss Conditions, 7. Valuation,** items **a.** and **b.** …" is also clear and unambiguous because the FBVE specifically and conspicuously states it modifies coverage under the Policy's general form, which contains "Section **E. Loss Conditions, 7. Valuation,** items **a.** and **b.**" (SUMF ⁋ 8-9). (emphasis in original). "Item **a.**" specifically refers to the general form's "actual cash value" condition; "item **b.**" refers to the general form's "replacement cost value" provision. (SUMF ⁋ 11).

The third phrase, "… are deleted in their entirety and replaced with the following:", is also clear and unambiguous. The Policy does not define "delete" or "replace". When a policy does not define a term, a court is free to give the term a reasonable construction. *Progressive Preferred Ins. Co. v. Reece*, 498 S.W.3d 498, 502 (Mo. Ct. App. W.D. 2016). Courts may look to dictionary definitions to ascertain the common meaning of a term. *Id*. The term "delete" means "to eliminate, especially by blotting out, cutting out, or erasing." "Delete", *Merriam-Webster.com Dictionary*,(Accessed 8/17/2023). The term "replace" means "to take the place of especially as a

substitute or successor." "Replace", *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/replace (Accessed 12/23/2023).

Therefore, the FBVE unambiguously states that the described terms in the general coverage form – the "actual cash value" and "replacement cost value" conditions – are cut out in their entirety and substituted with the FBVE's functional replacement condition. Because the "actual cash value" and "replacement cost value" provisions are unambiguously cut out in their entirety and substituted with the FBVE, the FBVE's functional replacement provision is therefore incorporated into the Policy's general form's valuation conditions as a matter of law.

**B.     There is no genuine dispute of material fact Defendant's claim falls under Section B of the FBVE.**

There is no genuine dispute of material fact the FBVE contemplates two options for determining valuation of a loss at Defendant's property. FBVE Section B describes valuation options in the event Defendant opts not to contract for repair or replacement within one hundred eighty days of the loss. (SUMF ⁋ 9). Defendant has not contracted for repair of the subject property, and Defendant does not dispute that Section B of the FBVE is the applicable valuation method for this claim. (SUMF ⁋ 37).

**C.     As a matter of law, the three applicable options for valuation of Defendant's claim under Section B of the FBVE are unambiguous, and Defendant is entitled only to the smallest of the three applicable options.**

The FBVE's Section B clearly and unambiguously provides Mount Vernon three options for valuation: the smallest of (1) the Limit of Insurance; (2) the "market value" of the damaged building, exclusive of land value, at the time of loss; or (3) the amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, minus depreciation. (SUMF ⁋ 9). (emphasis added). The Limit of Insurance is undisputedly $2,500,000. (SUMF ⁋ 3). Because these terms are all clearly

defined within the Policy and/or use plain and ordinary language, these three options for valuation of Defendant's loss are unambiguous as a matter of law.

1. **The phrase "the "market value" of the damaged building, exclusive of the land value, at the time of the loss" as used in Section B option 2 is clearly defined and unambiguous.**

The second option for valuation under the FBVE's Section B contains three clauses: "the "market value" of the damaged building, exclusive of the land value, at the time of the loss." (SUMF ⁋ 9). These clauses are all clearly defined and/or plainly and ordinarily stated.

The FBVE specifically defines "market value" as "the price that the property might be expected to realize if offered for sale in a fair market." (SUMF ⁋ 10). The first clause, therefore, plainly and ordinarily means the amount of money Defendant would gain if the damaged building was sold in a fair market.

However, the first clause is limited by the second and third clauses: "exclusive of the land value, at the time of the loss". (SUMF ⁋ 9). This language is plain and ordinary and requires no judicial interpretation; it clearly and unambiguously limits option B.2 of the FBVE to the amount of money Defendant would gain if the building was sold at the time of the loss – October 26, 2021.

2. **The phrase "amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred" is clear and unambiguous.**

The third option for valuation under the FBVE's Section B is, specifically, the "functional replacement" option. The International Risk Management Institute notes that functional building valuation "is designed to be used when the cost of a functionally equivalent building would be less than the cost to replace the building 'with like kind and quality.'" Clark Schirle, *Measuring Damage in A Megaloss If "Like Kind and Quality" Does Not Exist*, The Brief, Fall 2006, at 31, 33. Indeed, the FBVE's language plainly, clearly, and unambiguously states that "like kind and

quality" is not in play in valuing Defendant's loss. Section B.3 describes Mount Vernon's third option for payment as "the amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation." (SUMF ℙ 9).

A number of these terms are defined in the Policy. As discussed above, the "building" is defined as "the building or structure described in the Declarations". (SUMF ℙ 12). The "site" is also defined in the declarations, which clearly and plainly lists Defendant's property's address. (SUMF ℙ 1). "Depreciation" is defined as "a decrease in value because of age, wear, obsolescence or market value and includes: a) the cost of materials, labor and services; b) any applicable taxes; and c) profit and overhead; necessary to repair, rebuild or replace lost or damaged property." (SUMF ℙ 13). These terms are plain, ordinary, and do not require judicial interpretation.

The phrase "less costly material in the architectural style that existed before the damage occurred," is not defined in the Policy. Nevertheless, these terms are also plain and ordinary and require no judicial interpretation: "less costly materials" means "less expensive materials." "Architectural" means "of or relating to .. a method or style of building". "Architectural" *Merriam-Webster.com Dictionary*, https://merriam-webster.com/dictionary/architectural, (Accessed 8/21/23); "Architecture", *Merriam-Webster.com Dictionary*, https://merriam-webster.com/dictionary/architecture (Accessed 8/21/23). When read as a whole, option B.3 therefore plainly, ordinarily, and unambiguously values the loss at the cost not of an identical building but of one which looks similar to the damaged building but is built with cheaper materials, minus depreciation, as a matter of law.

**D.    Conclusion**

As a matter of law, the FBVE is unambiguously incorporated into the Policy as a replacement for the Policy's "actual cash value" and "replacement cost value" conditions. As a matter of law, when a loss falls under Section B of the FBVE, Mount Vernon must only pay the smallest of the FBVE's Section B options B.1, B.2, or B.3. Because it is undisputed that the loss falls under FBVE Section B, Mount Vernon is therefore obligated to pay only the smallest of FBVE Section B's options: B.1, B.2, or B.3.

Option B.1 is indisputedly and unambiguously $2,500,000. Options B.2 and B.3 utilize plain and ordinary language and/or language plainly and clearly defined within the Policy. Because all three options under Section B use plain and ordinary language, Section B is therefore unambiguous as a matter of law. Because the FBVE is unambiguous as a matter of law, it is therefore enforceable as a matter of law. Mount Vernon is thus entitled to judgment declaring the FBVE is valid, enforceable, and unambiguous.

**II.     Summary Judgment in Favor of Mount Vernon is Proper Because, as a Matter of Law, Defendant Must Present its Damages in a Manner and Form Compliant with the FBVE, and there is no Genuine Dispute of Material Fact that Defendant's Submitted Valuations Do Not Comply with the FBVE's Requirements.**

Summary judgment is proper. As a matter of law, following a loss Defendant must present their damages to Mount Vernon in a manner compliant with the FBVE's unambiguous terms. Defendant therefore must present its damages in a manner compliant with all three options under FBVE Section B as a matter of law. There is no genuine dispute of material fact that Defendant's submitted valuations do not comply with the FBVE's valuation conditions B.2 and B.3.

**A.     Under Missouri Law and the Policy, Defendant must present its damages in terms compliant with the Policy's valuation provision: the FBVE.**

In Missouri, an insured must apprise the insurer of damages and the insurer's duty to pay those damages. *West v. Shelter Mut. Ins. Co.,* 864 S.W.2d 458, 461 (Mo.App.1993). Failure to

produce requested documents when they are requested and in the form described in those requests is commonly found to be a breach of an insurance policy's cooperation clause in Missouri. See *Northrop Grumman Guidance and Elec. Co., Inc. v. Empl. Ins. Co. of Wausau*, 612 S.W.3d 1 (Mo. Ct. App. W.D. 2020) (holding insured's failure to comply with requests for information and insufficient responses to requests for documents indicated failure to cooperate).

In the event of a partial loss, Defendant bears the burden of proving the value of their property both before and after the casualty. *Wells v. Missouri Property Ins. Placement Facility*, 663 S.W.2d 207, 210 (Mo. en banc 1983) Valuation under an insurance policy is controlled by the insurance contract's provisions. See *Williams v. Farm Bureau Mut. Ins. Co. of Mo.*, 299 S.W.2d 587, 588-89 (Mo. Ct. App. 1957) (holding, where insured provided estimates for replacement only, contrary to policy's unambiguous valuation method providing for replacement <u>or repair,</u> insurer's obligations and election to repair did not cede to insured's desire for replacement only).

The Policy's cooperation clause outlines the required duties of an insured in the event of a loss. (SUMF ⁋ 4). Specifically, at Mount Vernon's request, Defendant must give Mount Vernon "complete" inventories of the damaged and undamaged property, including "quantities, costs, values and amount of loss claimed." (SUMF ⁋ 4). Defendant does not dispute the loss falls under Section B of the FBVE. (SUMF ⁋ 37).

As a matter of law, under both the Policy and Missouri law, Defendant thus bears the burden of proving the loss's valuation in a manner compliant with the Policy's terms. Because there is no dispute that the claim falls under the FBVE's Section B, Defendant must therefore present its valuations under all three options in the FBVE so that Mount Vernon may determine payment of the <u>smallest</u> of those options.

**B.    There is no genuine dispute of material fact that Defendant's submitted valuations under FBVE Sections B.2 and B.3 do not comply with the Policy's valuation methods.**

Section B of the FBVE provides that Mount Vernon will pay the <u>smallest</u> of its three options. Because Mount Vernon must <u>only</u> pay the smallest of options B.1, B.2, or B.3, Defendant must therefore present its damages in a manner compliant with all three options so that Mount Vernon may accurately determine which valuation is owed. Option B.1 is undisputedly $2,500,000. (SUMF ⁋ 3). There is no genuine dispute of material fact that Defendant has failed to provide Mount Vernon with proper valuations under the FBVE options B.2 and B.3.

**1.    There is no genuine dispute of material fact that Defendant's submitted Market Value Report does not comply with FBVE Section B.2, in that the Market Value Report postulates the subject property's market value as of April 14, 2022 – six months post-loss.**

As discussed above in Point I.C.1, *supra*, the second valuation option under the FBVE Section B is "the "market value" of the damaged building, exclusive of the land value, at the time of the loss." (SUMF ⁋ 9). Because Defendant must present their damages, Defendant therefore has an obligation under the Policy and Missouri law to present Mount Vernon with a "market value" of the building at the time of the loss.

Defendant submitted their Market Value Report in May 2022. (SUMF ⁋ 33). Defendant's Market Value Report valued the entire property at two million nine hundred and twenty-five thousand dollars ($2,925,000) with a "date of value" of April 14, 2022. (SUMF ⁋ 34-35).

The loss occurred on October 26, 2021. (SUMF ⁋ 14). Assuming, *arguendo*, that Defendant's appraisal accurately reflects the property's market value exclusive of the land value, it still does not comply with the FBVE's requirements. Option B.2 clearly and unambiguously defines Mount Vernon's option for valuation as the "market value" … "<u>at the time of the loss.</u>" (SUMF ⁋ 9) (emphasis added). Because Defendant's Market Value Report lists "April 14, 2022"

as the date of value and the FBVE clearly states the relevant date is October 26, 2021, there can be no genuine dispute of material fact that Defendant's Market Value Report is noncompliant with the valuation conditions of the Policy.

> **2.     There is no genuine dispute of material fact that Defendant's submitted estimates of the cost to repair the subject property do not comply with option B.3, in that the estimate proposes the cost to build an identical replacement and not a functional replacement.**

As discussed above in Point I.C.2, *supra*, option B.3 under the FBVE describes Mount Vernon's third option for payment as "the amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation." (SUMF ⁋ 9). Because Defendant must present their damages, Defendant therefore must present Mount Vernon with estimates for repair which demonstrate the amount it would cost to construct an architecturally similar <u>but cheaper</u> building – not the amount it would cost to build an identical replacement.

When Mount Vernon requested an inventory and estimate of damages, Defendant initially refused. (SUMF ⁋ 22). Defendant finally submitted an estimate for repair on March 17, 2022, via email through Defendant's public adjuster Paul Abrams. (SUMF ⁋ 24). In Abrams's email, he specifically states "the cost to repair both exceed [sic] the policy limit plus the deductible **at ACV** [actual cash value]." (SUMF ⁋ 26) (emphasis added).

Abrams's statement accurately portrayed the proposed cost of repair in the estimate – but it also confirms that cost is offered using the incorrect standard: "actual cash value". Although "actual cash value" never appears within the estimate prepared by Leonard Masonry ("the Leonard Estimate"), its substantial cost is due to its itemization of the rebuild at "actual cash value" and/or "like kind and quality" standards and not "functional replacement." However, as discussed above

in Point I.A, *supra*, the Policy's "actual cash value" condition is explicitly deleted and replaced with the FBVE's "functional replacement" standard. (SUMF ⁋ 11).

The Leonard Estimate posits the cost to rebuild the damaged bell tower at four million four hundred and fifty-five thousand and seventy-seven dollars ($4,455,077), well in excess of the Policy's limit. (SUMF ⁋ 27; 3). Specifically, the Leonard Estimate provides the rebuild will "rebuild tower using new brick up to 500,000 units… match[ing] as close as possible new brick to existing building" and "build[ing] tower walls to the existing thickness of 32". (SUMF ⁋ 28). (emphasis added). Notably, the Leonard Estimate explicitly acknowledges a millions-cheaper cheaper alternative replacement exists: "newer and more modern methods of construction using an engineered steel frame with a single course of brick veneer could possibly lower the rebuild construction cost between 1.7 and 2.7 million dollars." (SUMF ⁋ 29). (emphasis added). Defendant has never submitted an itemized estimate utilizing this significantly cheaper method of replacement.

There is no genuine dispute of material fact that the Leonard Estimate's itemizations explicitly provide for the construction of a near-identical "matching" building built to "existing" specifications. There is further no genuine dispute of material fact that Defendant's agent Abrams characterized the Leonard Estimate's cost as "at actual cash value". As a matter of law, FBVE option B.3 replaces the Policy's "actual cash value" provision with "functional replacement" – "less costly material in the architectural style that existed before the damage occurred". Because the Leonard Estimate utilizes an "actual cash value" standard rather than a "functional replacement" standard, there can therefore be no genuine dispute of material fact that the Leonard Estimate is noncompliant with the FBVE's option B.3.

### C.    Conclusion

Summary judgment is proper. As a matter of law, Defendant must present their damages in a manner and form compliant with the FBVE's three options under Section B. There is no genuine dispute of material fact that Defendant's submitted valuations do not comply with FBVE Section B.2 and B.3, in that they do not provide a "market value" on the date of loss and they do not provide "the amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation." Because Defendant's damages valuations and/or calculations do not comply with the FBVE's terms, Defendant has therefore failed to meet its obligations under the Policy as a matter of law. Mount Vernon is thus entitled to a declaration that Defendant has failed to comply with the FBVE.

III.    **Summary Judgment is Proper Because Defendant has Failed to Cooperate with Mount Vernon Matter of Law, in that Defendant has Repeatedly Refused to Submit its Damages in a Manner and Form Compliant with the Policy's Terms, Despite Mount Vernon's Reasonable Diligence to Obtain Defendant's Cooperation, Resulting in Substantial Prejudice to Mount Vernon.**

Summary judgment in favor of the insurer for an insured's failure to cooperate is appropriate when there is no genuine dispute of material fact that the insured has failed to comply with the policy's cooperation clause, and a reasonable fact finder could not find in favor of the insured as a matter of law. *McClune v. Farmers Ins. Co.*, 12 F.4th 845, 849 (8th Cir. 2021) (discussing and applying Missouri law surrounding cooperation clauses). Cooperation clauses are valid and enforceable in Missouri. *Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. 1979). An insured's failure to comply with a cooperation clause supports a claim's denial when an insurer can show: (1) the insured materially breached the cooperation clause; (2) the insurer was substantially prejudiced as a result of the insured's breach; and (3) the insurer exercised reasonable diligence to secure the insured's cooperation. *McClune*, 12 F.4th at 849; *see also Northrup*

*Grumman*, 612 S.W.3d at 24 (discussing string of circumstances evidencing breach and prejudice, including insured's failure to produce complete documents as described and requested by the insurer) (citing *Columbia Cas. Co. v. HIAR Holding, LLC*, 411 S.W.3d 258, 272 (Mo. Banc 2013).

In Missouri, an insured must apprise the insurer of damages and the insurer's duty to pay those damages in a manner compliant with the relevant policy's terms. *West v. Shelter Mut. Ins. Co.,* 864 S.W.2d 458, 461 (Mo.App.1993); *Northrup Grumman*, 612 S.W.3d at 24. Missouri courts have consistently and routinely found the insured's failure to assist in the investigation constitutes a material breach of the cooperation clause and precludes any coverage, because insurers have a right to a complete investigation of claims before payment. *Roller v. American Modern Home Ins. Co.*, 484 S.W.3d 110, 116 (Mo.App. W.D. 2015); see also *Hendrix*, 580 S.W.2d at 743-44; *Quisenberry v. Kartsonis*, 297 S.W.2d 450, 453 (Mo. 1956); *Union Ins. Co. of Providence v. Williams*, 261 F.Supp.2d 1150, 1152 (E.D.Mo. 2003) (holding that cooperation clauses are valid and enforceable under Missouri law).

"Substantial prejudice" may be demonstrated by a continued and repeated course of noncooperation by the insured. *Riffe v. Peeler*, 684 S.W.2d 539, 543 (Mo.App. W.D. 1984) (noting it "strains credulity to the breaking point" to argue insured's failure to make himself available to insurer did not substantially prejudice insurer). Prejudice can also be established when the insured fails to comply with an insurer's reasonable request for information because the insured has "perhaps the greatest knowledge of the circumstances." *Roller*, 484 S.W.3d at 116 (quoting *In re Am. Wood Concepts, LLC*, 4 Bankr. (W.D. Mo. Apr.20. 2010). Thus, if an insured willfully and *without excuse* refuses discovery, an insurer may refuse to go forward with an adjustment and claim immunity from suit. *Id*. (emphasis in original) (citing *Farm Bureau Town & Country Ins. Co. of Mo. v. Crain*, 731 S.W.2d 866, 871 (Mo.App. S.D. 1987).

To establish due diligence, an insurer must present evidence demonstrating the steps it took in order to secure cooperation from the insured. *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 857 (Mo.App. E.D. 1999). When a motion for summary judgment is brought by the insurer, the insured bears the burden of establishing the absence of facts necessary to support the insurer's argument that it acted diligently in its attempt to secure the insured's cooperation. *Id.*

Summary judgment is proper. There is no genuine issue of material fact that Chippewa has breached the cooperation clause, nor is there a genuine issue of material fact that Mount Vernon has been prejudiced by Chippewa's breach, nor is there a genuine issue of material fact that Mount Vernon exercised reasonable diligence to secure Chippewa's cooperation. The construction of the Policy entitles Mount Vernon to judgment as a matter of law.

**A.     Defendant has Materially Breached the Policy's Cooperation Clause**

There is no genuine dispute of material fact that Defendant has materially breached at least two subsections of the Policy's cooperation clause.

An insured must perform the conditions of the contract upon which the insurer's liability depends and, absent fraud, bad faith, or collusion by the insurer, the insured's unexcused failure to cooperate in a substantially material respect releases the insurer from liability under the policy as to the particular casualty in question. *Quisenberry*, 297 S.W.2d at 453. The Policy's cooperation clause outlines the required duties of an insured in the event of a loss. (SUMF ¶ 14). These duties are conditions precedent to coverage and include, among others, that Chippewa must take all reasonable steps to mitigate further damage to the Property; and that Chippewa must give Mount Vernon complete inventories of the damaged and undamaged property at Mount Vernon's request. (SUMF ¶ 14).

There is no genuine issue of material fact that Chippewa materially breached these conditions precedent to coverage. Chippewa informed Mount Vernon of how, when, and where the loss occurred on October 26, 2021. (SUMF ¶ 14). However, Defendant, through its agent Paul Abrams, declined any mitigation efforts to further protect the Property. (SUMF ¶ 19). Mitigation efforts following a loss are substantially material to Mount Vernon's ultimate liability, as Defendant's failure to mitigate could and/or would ultimately cause further loss and increase costs to repair and/or replace Defendant's property. Because Defendant's failure to mitigate could ultimately cause further loss and/or increase costs associated with the loss, Defendant's refusal to mitigate is therefore a failure to cooperate in a substantially material manner.

There is no genuine issue of material fact that Chippewa has never provided a complete inventory of damage that is compliant with the Policy's terms, as discussed above in Point II. When an inventory and estimate were requested, Defendant initially refused and then ultimately only offered incomplete and improper valuations employing "like kind or quality" or "actual cash value," rather than the required "less costly materials in the same architectural style" as is unambiguously delineated in the FBVE and as was described to Defendant by Mount Vernon. (SUMF ¶ 20-29). Furthermore, Defendant's "Market Value Report" does not comply with the Policy's requirement that it present a market value at the date of loss. (SUMF ¶ 33-35). Defendant refused to produce proper forms of these documents following subsequent requests. (SUMF ¶ 30-32). Failure to produce requested documents when they are requested and in the form described in those requests is commonly found to be a breach of an insurance policy's cooperation clause in Missouri. *Northrop Grumman*, 612 S.W.3d at 24; *Crain*, 731 S.W.2d at 871 ("If an insured willfully and without excuse refuses discovery, an insurer may refuse to go forward with an adjustment and claim immunity from suit").

Defendant's submitted valuations are not only improper but also do not meet the standard required of Chippewa's duties after loss described in the Policy. Without these proper estimated valuations, Mount Vernon cannot adequately establish the claim's worth. By refusing to provide the required estimates, Defendant therefore suggests that Mount Vernon should merely take Defendant at its word. Because providing such information as outlined in the Policy is a condition precedent to recovery, and because Mount Vernon cannot accurately assess the value of Defendant's loss under the Policy's terms without such documents, Chippewa's refusal to provide detailed inventories and estimates utilizing the proper valuation calculations is therefore a material breach of the Policy's plain terms.

Thus, there is no genuine dispute of material fact that Chippewa has materially breached the Policy's cooperation clause in multiple instances. The plain and unambiguous language of the Policy demands Chippewa's cooperation as a prerequisite to recovery. Chippewa's breach of the plain and unambiguous language of the policy entitles Mount Vernon to judgment as a matter of law.

### B.   Defendant's Continued and Repeated Course of Noncooperation has Substantially Prejudiced Mount Vernon

There is no genuine dispute of material fact that Chippewa's repeated course of noncooperation substantially prejudiced Mount Vernon. Summary judgment is proper.

The substantial prejudice to Mount Vernon hinges on Chippewa's continued and repeated course of noncooperation. Mount Vernon informed Chippewa numerous times of its requirements under the insurance contract, including on November 10, 2021; February 24, 2022; March 7, 2022; March 18, 2022; March 21, 2022, and April 1, 2022. (SUMF ¶ 20-23; 30-32)

On March 17, 2022, Abrams provided what he claimed to an estimate. (SUMF ¶ 24). What Abrams actually provided were incomplete and improper repair and valuation statements

(including the Leonard Estimate) that did not meet the requirements outlined in the Policy and the FBVE. (SUMF ⸗ 25-29).

Per the Policy's express language, Defendant must "give [Mount Vernon] complete inventories of the damaged and undamaged property" that "[i]nclude quantities, costs, values, and amount of loss claimed." (SUMF ⸗ 4). Mount Vernon has requested compliant documentation on at least five occasions. Defendant has never provided Mount Vernon such documentation, nor has Defendant provided any reason for noncompliance; instead, Defendant continues to demand policy limits and a premature appraisal.[1]

Therefore, there is no genuine dispute of material fact that Chippewa demonstrated both a continuous and repeated course of noncooperation in that it has willfully and without excuse refused discovery required by the Policy on at least five separate occasions. This repeated course of noncooperation has forced Mount Vernon to retain counsel and expend extensive costs in its attempts to obtain such discovery, discovery (proper estimates) which it still has yet to obtain.

---

[1] Appraisal is premature under Missouri law. In Missouri, appraisal is only appropriate if there is a disagreement over valuation, not coverage. A coverage dispute is a controversy and disagreement that relates to the extent of an insurer's liability; coverage disputes cannot be determined through the appraisal process. *Brewer v. State Farm Fire and Cas. Co.*, 641 S.W.3d 445, 449 (W.D.Mo. 2002). Appraisal only applies if the dispute is over the amount of loss, not coverage. *Id.* Defendant has not provided Mount Vernon with an amount of loss compliant with the Policy's coverages and valuation methods; Defendant's submitted estimates, etc., are thus on a different valuation standard than is required by the Policy. Appraisal is therefore premature until Defendant provides a valuation utilizing "functional replacement" – not "like kind or quality" – that disagrees with Mount Vernon's valuation utilizing "functional replacement". Moreover, Abrams, as Defendant's public adjuster, cannot act as Defendant's appraiser under Missouri law because he has a direct financial interest in the appraisal's outcome. Especially when an insurance policy demands that an appraiser be disinterested, courts applying Missouri law have consistently vacated appraisal awards involving an interested appraiser. *TAMKO Bldg. Prods. V. Factual Mut. Ins. Co.*, 890 F.Supp. 2d 1129, 1140 (E.D. Mo. 2012); *Harris*, 571 F.Supp.2d at 1079; *Orr*, 201 S.W.2d at 957; *Schwartzman*, 2 S.W.2d at 594-95.

Chippewa's noncooperation has thereby substantially prejudiced Mount Vernon and its ability to swiftly evaluate and close Chippewa's claim under the Policy.

C. **Mount Vernon has Exercised Reasonable Diligence in Attempting to Secure Defendant's Cooperation to No Avail**

It is undisputed that Mount Vernon has exercised reasonable diligence in attempting to secure Defendant's cooperation with its investigation of the loss. Defendant cannot establish the absence of facts necessary to support Mount Vernon's argument. Summary judgment is proper.

Substantial evidence of Mount Vernon's reasonable diligence to secure Chippewa's cooperation exists. On January 6, 2022, Doug Maestas of Signature Adjustment Group notified Chippewa of its duties after loss (including providing a proof of loss and estimated valuation for repairs compliant with the FBVE). (SUMF ⁋ 20). Defendant refused to provide any estimates of its own and instead demanded, through its agent Paul Abrams, to see Mount Vernon's estimates. (SUMF ⁋ 22).

On February 24, 2022, Maestas again requested Chippewa's proof of loss and repair estimate, noting in particular that his request was neither unreasonable nor contrary to Defendant's duties under the Policy. (SUMF ⁋ 21). In his March 7, 2022 response, Abrams refused to obtain any estimates until provided with Mount Vernon's estimates. (SUMF ⁋ 22).

On March 17, 2022, Abrams provided a noncompliant estimate for repair prepared by Leonard Masonry. (SUMF ⁋ 24-25). On March 18, 2022, Mount Vernon again requested an estimate compliant with the Policy's terms. (SUMF ⁋ 30). Abrams met Mount Vernon's request with complaints that Defendant was even being required to submit an estimate, apparently denying that the Policy's Duties After Loss required Defendant to present its damages. (SUMF ⁋ 30). Three days later, on March 21, 2022, Abrams again refused to provide a compliant estimate, stating the non-compliant Leonard Estimate was satisfactory. (SUMF ⁋ 31).

Mount Vernon rejected the Leonard Estimate on April 1, 2022 because it did not comply with the terms repeatedly outlined to Defendant as required under the Policy. (SUMF ⁋ 32). As discussed above, the Leonard Estimate did not meet the Policy's "functional replacement" requirements – it did not include itemized values for repairs, and it provided for repairs at a "like kind or quality" valuation rather than the "functional replacement" valuation designated in the Policy. (SUMF ⁋ 26-29).

Nevertheless, in May 2022 Mount Vernon issued a good-faith payment of $875,000, notifying Defendant that this payment did not preclude the recovery of any further damages under the Policy; rather, the payment merely constituted the undisputed minimum damages per Mount Vernon's investigation and the FBVE. (SUMF ⁋ 36).

This undisputed timeline demonstrates Mount Vernon's substantial, continuous steps to secure Defendant's cooperation with the investigation of its claim. Defendant has at every turn dodged Mount Vernon's numerous requests for supporting documentation complying with Defendant's obligations under the Policy and the FBVE. Mount Vernon has provided significant evidence that it has attempted – repeatedly and unsuccessfully – to obtain any documentation from Defendant supporting Defendant's valuation of the loss. Even in the absence of this supporting documentation, Mount Vernon still made a substantial good-faith payment based on its own investigation of the loss, demonstrating it was willing to continue to work with Defendant if Defendant would simply comply with the terms of the Policy.

Mount Vernon has thus provided substantial evidence of its attempts to secure Defendant's cooperation, and Defendant cannot establish the absence of facts demonstrating Mount Vernon's reasonable diligence in securing Defendant's cooperation. Summary judgment is therefore proper.

### D.     Conclusion

Summary judgment is proper. There is no genuine dispute of material fact that Defendant materially breached the Policy's cooperation clause. The Policy plainly and unambiguously lays out numerous duties Defendant must comply with after a loss. Defendant has not complied with these duties, in that Defendant (1) failed to implement any mitigation efforts required by the Policy; and (2) failed to provide a complete inventory of damages despite Mount Vernon's requests.

There is no genuine dispute of material fact that Defendant's repeated course of noncooperation – its willful refusal to provide compliant discovery without excuse and despite numerous requests – substantially prejudiced Mount Vernon.

There is no genuine dispute of material fact that Mount Vernon exercised reasonable diligence in attempting to secure Defendant's cooperation.

Defendant is precluded from further recovery as a matter of law. Chippewa materially breached the cooperation clause; the breach substantially prejudiced Mount Vernon; and Mount Vernon exercised reasonable diligence to secure Defendant's cooperation. Defendant thus failed to cooperate with Mount Vernon under the Policy's plain and unambiguous terms. This failure to cooperate entitles Mount Vernon to judgment as a matter of law. Summary judgment is therefore proper.

## PRAYER FOR RELIEF

**WHEREFORE**, there is no genuine dispute of material fact and Mount Vernon is entitled to judgment as a matter of law. Plaintiff Mount Vernon thus respectfully requests this Honorable Court enter an order:

(1)      Declaring the FBVE valid, enforceable, and unambiguous; and,

(2)      Declaring the Greater St. Louis Appraisal noncompliant with the FBVE's terms; and,

(3)      Declaring the Leonard Estimate noncompliant with the FBVE's terms; and,

(4)      Declaring Defendant is not entitled to any further coverage due to Defendant's repeated course of noncooperation in violation of the Policy's terms; and,

(5)      for any and all further relief this Honorable Court deems just and proper under the circumstances.

<div style="margin-left:40%">

Respectfully submitted**,**

**RYNEARSON, SUESS, SCHNURBUSCH & CHAMPION L.L.C**

 */s/ Ellen J. Brooke* _____

Ellen Jean Brooke              #58901MO
Katherine M. Smith            #57881MO
Collin D. McCabe              #74754MO
500 N. Broadway, Suite 1550
St. Louis, Missouri 63102
Phone:  (314) 421-4430
Fax:  (314) 421-4431
ebrooke@rssclaw.com
ksmith@rssclaw.com
cmccabe@rssclaw.com
*Attorneys for Plaintiff Mount Vernon Specialty Insurance Company*

</div>