UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MOUNT VERNON SPECIALTY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) CHIPPEWA LOFT LLC, ) ) Defendant. ) | Case No. 4:22-cv-583-SEP |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff/Counterclaim Defendant Mount Vernon Specialty Insurance Company's Motion to Dismiss Defendant/Counterclaim Plaintiff Chippewa Loft LLC's Counterclaim, Doc. [40]. For the reasons set forth below, the motion is granted.

### FACTS[1] AND BACKGROUND

At all times relevant to this matter, Chippewa Loft owned a vacant building—a stone and masonry church—in St. Louis, Missouri, located near the intersection of Kingshighway Boulevard and Washington Avenue. Doc. [1] ¶¶ 6-10. Chippewa Loft purchased the property in 2012 for $1,275,000. Doc. [37] ¶ 38. On November 27, 2020, Mount Vernon issued an insurance policy to Chippewa Loft, insuring the building for $2,500,000 with a deductible of $25,000. Doc. [1] ¶¶ 6-10. The policy had a relevant period of November 27, 2020, through November 27, 2021, and it carried certain exclusions and limitations. *Id.* ¶ 12.

As alleged by Mount Vernon, the policy included a functional building valuation endorsement (FBVE) and employed a "functional replacement" method for calculating damage, as opposed to methods such as "replacement cost" or "actual

---

[1] In its Answer and Counterclaim, Chippewa Loft alleges certain facts, which the Court takes as true for purposes of this motion. *See* Doc. [37] at 9-15; *Neitzke v. Williams*, 490 U.S. 319, 338 (1989). Facts alleged by Mount Vernon in the Complaint, Doc. [1], are included only to provide context for the larger dispute; the Court does not rely on them in resolving this motion.

1

cash value." *Id.* ¶ 15.  Under a functional replacement method, in the case of a partial loss, a functional replacement of the damaged property is afforded, not an identical replacement.  *Id.*  Chippewa Loft alleges that the policy does not require use of the FBVE, and that either the market value of the property or the cost of returning the property to a "condition as good as before the fire" could be used to calculate damages.  Doc. [37] ¶¶ 16, 19, 21, 29-30.  Chippewa Loft asserts the market value is $2.995 million, which is the amount for which it had entered into a contract to sell the property prior to the fire.  *Id.* ¶¶ 22-25.

The policy also required Chippewa Loft to perform certain duties in the event of a loss, including taking reasonable steps to protect the property from further damage; providing Mount Vernon with a description of how, when, and where the loss occurred; providing Mount Vernon with an inventory of the damaged property; permitting Mount Vernon to inspect the property to prove the loss; and cooperating with Mount Vernon in the investigation or settlement of a claim.  Doc. [1] ¶ 14.

On October 26, 2021, the building sustained a partial loss when an act of arson damaged its bell tower.  *Id.* ¶ 19.  The fire caused structural damage and necessitated the demolition of the tower.  *Id.*  The main portion of the building was also damaged due to smoke and water.  *Id.* ¶ 20.  On the day of the fire, Chippewa Loft reported the loss to Mount Vernon, and Mount Vernon opened a claim.  *Id.* ¶ 21.  Upon opening a claim, Mount Vernon retained Signature Adjustment Group (SAG) to begin the process of investigating and adjusting the claim pursuant to the terms of the FBVE.  *Id.* ¶ 22.  Mount Vernon also retained ProNet Group Inc. to inspect and ensure that the building was fit for repair, and retained the real estate firm of Lauer, Jersa & Associates to determine the market value for a functional replacement building.  *Id.* ¶¶ 23, 24.

After beginning its investigation, Mount Vernon informed Chippewa Loft that the adjustment of the claim would likely take several weeks due to the size and complexity of the building, the building's pre-existing and post-loss conditions, and attendant investigations and safety protocols.  *Id.* ¶ 25.  Mount Vernon also advised Chippewa Loft of its duties after a loss and encouraged Chippewa Loft to document

its claimed damage (including the cost, value, quantities, and amount of loss) and present it to Mount Vernon as soon as possible.  *Id.* ¶ 26.  Mount Vernon further encouraged Chippewa Loft to begin mitigation procedures to protect the building from further damage.  *Id.*

Chippewa Loft subsequently notified Mount Vernon that it had retained Edwin Claude Inc. to assist in preparing and presenting its claim.  *Id.* ¶ 28.  Pursuant to the engagement agreement between Edwin Claude and Chippewa Loft, Edwin Claude was vested with the sole authority to speak and act on behalf of Chippewa Loft in all matters related to the claim.  *Id.* ¶ 29.  Mount Vernon later inquired with Edwin Claude on the status of a mitigation plan and the presentation of Chippewa Loft's claim.  *Id.* ¶ 30.  Edwin Claude responded by declining mitigation services and refusing to prepare an inventory of the damaged property.  *Id.* ¶ 31.  According to Mount Vernon, Edwin Claude insisted on first seeing Mount Vernon's inventory and demanded immediate payment of the policy's limit of $2,500,000.  *Id.* ¶ 32.

Over the course of the next several weeks, the safety and security of the building was assured, and fire origin investigations were completed.  *Id.* ¶ 33.  SAG's initial assessment suggested that the cost to repair the covered damage was between $800,000 and $1,000,000.  *Id.* ¶ 34.  As of the time of SAG's initial assessment, Edwin Claude remained unwilling to prepare an inventory of the damaged property.  *Id.* ¶ 35.  At some point, Edwin Claude began demanding an appraisal of the damaged property.  *Id.* ¶¶ 37-38.  Edwin Claude's demands for an appraisal were not accompanied by an identification of a competent and impartial appraiser to serve on Chippewa Loft's behalf.  *Id.*  While Edwin Claude did eventually prepare and present an inventory of the damaged property, according to Mount Vernon, Edwin Claude's inventory failed to account for pre-existing conditions and failed to support a demand for the policy's limit of $2,500,000.  *Id.* ¶¶ 39-40.

In January 2022, Lauer, Jersa & Associates submitted its market value report for the building in the amount of $900,000.  *Id.* ¶ 42.  In March 2022, Mount

3

Vernon paid the "undisputed" damages it believed were owed to Chippewa Loft, issuing to Edwin Claude $875,000, representing the building's market value less Chippewa Loft's deductible, and which amount Mount Vernon determined was appropriate under the FBVE. *Id.* ¶¶ 45-46, 57. Edwin Claude confirmed the payment but denied its sufficiency, claiming that the actual value of the building exceeded the policy's limit of $2,500,000. *Id.* ¶ 47. Chippewa Loft asserts that Lauer, Jersa & Associates failed to acquire all information necessary to reach an objective appraisal, and that it failed to account for the property's historic status and available historic tax credits. Doc. [37] ¶ 39-40.

Thereafter, Mount Vernon received numerous written demands from Edwin Claude for immediate payment of the remaining $1,625,000 that it believes Chippewa Loft is owed under the policy. Doc. [1] ¶ 48. None of the demands was accompanied by an inventory of the damaged property or an identification of a competent and impartial appraiser. *Id.* ¶ 49. Due to threats of litigation, Mount Vernon filed this action for declaratory judgment on May 31, 2022, seeking a declaration of the parties' rights under the policy.

Chippewa Loft filed a motion to dismiss this action, Doc. [9], which the Court denied on March 29, 2023, Doc. [25]. Thereafter, Chippewa Loft filed an answer and one counterclaim against Mount Vernon for vexatious refusal to pay pursuant to Mo. Rev. Stat. § 375.420. Doc. [37]. Mount Vernon now moves to dismiss Chippewa Loft's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. [40]. Chippewa Loft has not responded to the motion, and the time to do so has passed.

## Legal Standard

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes all of the nonmovant's factual allegations to be true and construes all reasonable inferences in favor of the nonmoving party. *See Neitzke v. Williams*, 490 U.S. 319, 338 (1989).

4

Federal Rule of Civil Procedure 8(a)(2) provides that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the nonmovant must allege facts supporting each element of its claims, and the claims cannot rest on mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the pleading "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The issue in considering such a motion is not whether the nonmovant will ultimately prevail, but whether it is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

## DISCUSSION

Chippewa Loft asserts a counterclaim for vexatious refusal to pay pursuant to Mo. Rev. Stat. § 375.420. Doc. [37]. To establish vexatious refusal to pay, Chippewa Loft must prove: (1) it had an insurance policy with Mount Vernon; (2) Mount Vernon refused to pay; and (3) Mount Vernon's refusal was "without reasonable cause or excuse." *See Dhyne v. State Farm & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006); *Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 498 (Mo. Ct. App. 2021). Chippewa Loft alleges that Mount Vernon's behavior in adjusting its claim was vexatious and without reasonable cause because the FBVE did not apply to its claim; therefore, Mount Vernon's utilization of the FBVE was a "bad faith attempt to delay" payment of the claim. *Id.* ¶¶ 28-30.

Missouri law does not recognize a stand-alone cause of action for vexatious refusal; rather, a vexatious refusal claim is derivative of a breach-of-contract claim. *See Aziz v. Allstate Ins. Co.*, 875 F.3d 865, 869 (8th Cir. 2017) (citing *Fischer v. First American Title Ins. Co.*, 388 S.W.3d 181, 184 (Mo. Ct. App. 2012); Mo. Rev. Stat. § 375.296 (damages for vexatious refusal to pay are awarded "in addition to the amount due under the provisions of the contract of insurance"). The vexatious refusal statute provides for an extra-contractual penalty that supplements a breach

5

of contract claim, providing recovery for an insured where the insurer's refusal to pay under the policy was not reasonable.  *See Overcast v. Billings Mutual Ins. Co.,* 11 S.W.3d 62, 67 (Mo. banc 2000); *see also Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.,* 2006 WL 1722278 at *2 (E. D. Mo. Jun.19, 2006) ("[A] vexatious refusal to pay claim is a *supplement* to a breach of contract claim, and may be brought *in addition* to a breach of contract claim.") (emphasis added).  There can be no recovery for vexatious refusal where there is no prior claim for breach of the insurance policy.  *Aziz,* 875 F.3d at 869 (citing *State ex rel. U.S. Fidelity & Guaranty Co. v. Walsh*, 540 S.W.2d 137, 141-42 (Mo. App. 1976).

Mount Vernon argues that Chippewa Loft's counterclaim for vexatious refusal must be dismissed because Missouri law does not recognize a stand-alone cause of action for vexatious refusal, and Chippewa Loft has not brought a related claim for breach of contract.  *See* Doc. [41] at 1-2.  The Court agrees.  Under Missouri law, because Chippewa Loft has not brought a breach of contract claim against Mount Vernon, it cannot bring a vexatious refusal claim.

Accordingly,

**IT IS HEREBY ORDERED** that Mount Vernon's Motion to Dismiss Chippewa Loft's counterclaim for vexatious refusal, Doc. [40], is **GRANTED**, and the counterclaim is **DISMISSED** without prejudice**.**

Dated this 29th day of March, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE